And now
Smith, Justice,
delivered the opinion of the court, as agreed upon in a conference between him and Yeates, Justice, the latter having been prevented from attending the court, by indisposition.
The defendant has been found guilty of wilful and corrupt perjury, in his answer to certain interrogatories filed in the court of Common Pleas of Franklin county, touching certain oppro *brious expressions, made use of by him respecting the *411] same court. His counsel have filed reasons in arrest of judgment, which we have fully considered.
I shall first premise, that tenderness ought always to prevail in criminal cases, so far at least, as to take care, that a man may not suffer otherwise than by due course of law, nor have any hardship done him, or severity exercised upon him, where the construction may admit of a reasonable doubt, or difficulty. 4 Burr. 2082. We are bound to pronounce the law, as we think it is, always leaning to the favorable side, where we doubt. For so, says the law. Rex v. Wilkes, 4 Burr. Per Lord Mansfield.
i. The first reason in arrest of judgment is, that the deposition on which the perjury is assigned, is stated to be on an interrogatory filed between the commonwealth and the defendant, on the part of the commonwealth; without stating any proceeding between the commonwealth and the defendant, in which the said deposition would joe material.
This objection was taken at the trial under another shape, and was overruled by the court. It was then said, that the interrogatories were wrongly entitled ; that the plea was pending between James Taylor and Thomas Shirley, and the rule was entered in that cause ; and inasmuch as the proceedings were on the civil side of the court until the attachment issued, the interrogatories should have been filed in that suit, and headed accordingly. To this point were cited 3 Term Rep. 253, and 6 Term Rep. 642, note, and the case of Caleb Wayne, lately decided in the Circuit Court of the United States, for the eastern district of Pennsylvania. The answer given was, that- we had not adopted that nicety of form here, which was practised in *411 England; but at the utmost, that the defendant should have taken advantage of the informality, and shewed to the court, the grounds of his refusal to answer the interrogatories. He was now too late, after he had come in and voluntarily submitted to answer. The rule was entered in December term 1799, that the defendant should shew cause, why an attachment should not issue against him, for treating the process of the court with contempt, and using opprobrious words respecting the court. This rule was grounded on due proof made of his improper conduct previous thereto. He was then actually in contempt. We considered the rule to shew cause in such a case as wholly unnecessary. For contemptuous words spoken of a court, its rules or process, an attachment issues immediately of course. Sayer 114. 1 Stra. 185. The party must answer in custody; for it is to no purpose to serve him with a second rule, that has *slighted and despised the first; it would expose the court [*412 to further contempt. 1 Salk. 84. The jurisdiction of the L ^ court on its criminal side grew out of the civil action, returned on the certiorari in the plea above stated, and the oath of the party became material. The issuing of the attachment is only for the purpose of bringing in the party to answer-to the interrogatories ; and if he can swear off the contempt he is discharged. 12 Mod. 348. If he deny all on oath, he is set at liberty; but he must be indicted for perjury if he forswear himself. 12 Mod. 511. 8 Mod. 81. Doug. 498. Mosel. 250. 1 Stra. 444. Annal. 178. 4 Burr. 2106. When therefore Newell appeared in the Court of Common Pleas, to purge himself of the contempt charged against him, we viewed him in the same light, as if his presence had been enforced by attachment, and were of opinion, that in either case, the interrogatories should be entitled in the same manner. We considered the rule to shew cause stated in the indictment, as mere matter of inducement. An indictment for perjury at an assize, may alledge the oath to have been taken before one of the judges in the commission, though the names of both are inserted in the caption. Leach 154.
2. The second objection is, that it is not stated that the defendant took an oath on the holy gospel of God, or in the presence of Almighty God by uplifted hand. The indictment charges, that “the said Robert Newell did then and there, in “due form of law, take his corporal oath,” &c. This form was approved of by Lord Hardwicke, who says, the words, corporal oath, may stand for lifting up an arm or other bodily member. What is universally understood by an oath is, that “ the person “ who takes it, imprecates the vengeance of God upon him if “the oath he takes is false.” 1 Atky. 20. In the great case of Omychund v. Barker, Ld. Chan. Baron Parker said, he did not think, tactis sacris Evangcliis were necessary words ; for several old precedents are, that the party vra&juratus generally, or debito modo juratus. Vide West’s Symb. 2d part, under the head of *412 Indictments and Offences. Sec. 160. 1 Atky. 43, 44. Lord Chief Justice Willes says, that sacrosancta Evangelio, are not at all material words in indictments for perjury. Ib. 46. Lord Chancellor Hardwicice asserts the same opinion, and observes that the framers of indictments are apt to throw in words, and to swell them out too much to no purpose; therefore the old precedents are the best. Ib. 50. According to Lord Chief Justice Kenyon, an indictment for perjury is sufficiently certain, if it only states the defendant to have been in due manner sworn. Peake 156. Vide Ib. 23, Mee v. Reid, and Leach’s Crown Cases 348. Mildrone’s case.
*3 The third reason in arrest of judgment is most *413] material, and has obtained from us much consideration. It is this : that in the assignment of the perjury, it is not stated that the defendant did falsely, corruptly and wilfully swear, &c. If the indictment is considered as grounded on the statute 5 Eliz. c. 9, it is certainly defective; because the words wilfully and corruptly are inserted in the 6th paragraph, as material descriptions of the offence'. And it is clearly settled, that in every prosecution on this statute, the words thereof must be exactly pursued; and therefore, that an indictment or action on the said statute, alleging that the defendant deposed such a matter false and deceptive, (2 Leon. 211. 3 Leon. 230. 1 Show. 190) or, false et corruptive, (Hill. 12. Cro. El. 147) or, false scciá voluntarle (Sav. 43) without expressly saying that he did it voluntarle et corriipte, is not good, and that such a defecfc cannot even be supplied by adding the words contra formam stattiti, or concluding et sic vohmtarmm et comtptum commisit perjurium. 2 Leon. 214. 1 Leon. 230. Hetl. 12. Savil. 43. Cro. El. 147. 1 Hawk. c. 69, § 17.
The present indictment concludes, “contrary to the act of “ general assembly in such case made and provided.” But on examining our statute book it will be found, that the only law respecting this offence in courts of justice, was enacted on the 31st May 1718, the 24th section whereof goes to subornation of perjury; and the 25th section extends the English statute of 5 Eliz. c. 9, and declares, that this statute shall be put into due execution here. 1 St. Laws 143. The act of 5th April 1790, 2 St. Laws 804, which was made perpetual by the act of 4th April 1799, (4 St. Laws 399) prescribes fine and imprisonment, in lieu of the former infamous punishments of pillory and whipping. It will be further found, that this statute of 5 Eliz. c. 9, extends to no other perjury than that of a witness; and therefore no one can come within the statute, by reason of any false oath in an answer to a bill in chancery, (Cro. El. 148. 2 Leon. 201. Dalis. 84. Yelv. 120) or in swearing the peace against another, (2 Rol. Ab. 77, pl. 5) or by reason of a false wager of law, (Noy. 7, 108) or for taking a false oath before commissioners appointed by the king, to make an inquiry concerning his title to certain lands. Moor 627. 1 Hawk. c. 69, § 20. It therefore *413 necessarily follows, that if the indictment had been framed with the utmost correctness, under the statute of 5 Eliz. the offence of the defendant was not punishable thereby, because he-was not a witness, examined in a court of justice, in the usual course of proceeding.
*But the law is perfectly ascertained, that one may be guilty of perjury at common law in respect of a false oath, [*414 taken by him in his own cause, in answer to questions put to him in a court of law, having power to purge him upon oath, concerning his knowledge of the matters in dispute. 1 Rol. Ab. 40, pl. 15. 83, pl. 9. Cro. El. 609. So also in a court of equity. 1 Leon. 127. Cro. El. 135, 905. 1 Sid. 244. 1 Hawk. c. 69, § 5.
This introduces the great question, whether this indictment can be supported against the defendant on the principles of the common law.
It was formerly held, that no indictment grounded on a statute and concluding contra formam statuti could be maintained as an indictment at common law; but the contrary is now adjudged, and the words contra formam statuti shall be rejected as useless, where the offence is prohibited by the common law only. The substance of the indictment being found, the rest is but surplusage, which hurteth not the verdict, and it shall be taken as it may stand by law. Atky. 43. Sty. 86. 1 Sid. 421. 2 Keb. 138, pl. 5. 1 Salk. 212. 2 Hawk. c. 25, § 115. 5 Term Rep. 162.
Perjury is defined by Lord Coice, to be a crime committed, when a lawful oath is administered in some judicial proceeding, to a person who swears wilfully, absolutely and falsely, in a matter material to the issue, or point in question. 3 Inst. 164. 4 Bl. Com. 137. And in 10 Mod. 195, it is laid down, that the oath must not only be false, but wilful and malicious to make it perjury. Here the legality of the oath, and the propriety of the judicial procedure are indisputable. The indictment states, that the defendant did “ then and there voluntarily, and of his own “free will and accord propose to the said court, to purge him- “ self upon oath of the said contempt alledged against him ; that “ he was then and there duly sworn on his corporal oath, and “then and there did answer and declare,” &c. ; negativing by express averments the truth of his oath, with a conclusion, that “he the said Robert Newell, the day and year aforesaid, at “ Chambersburgh aforesaid, &c. &c. by his own act and consent, “ and of his own most wicked and corrupt mind and disposition “in manner aforesaid,. did knowingly, falsely, wickedly, mali“ciously and corruptly commit wilful and corrupt perjury,” &c.
On the bare reading of the indictment, one would reasonably suppose, that the wilfulness, absoluteness, falsity and malice of the oath were sufficiently asserted and charged against the defendant. But his counsel have ingenioxtsly objected, that it does not pursue the course of the precedents, and that the of-fence is not laid in a manner known to the law.
*414 We hold ourselves bound by precedents. We flatter ourselves, *we can say with Lord Chief Justice Kenyon, “it *415] is our wish and comfort, to stand super antiquas vias.” 7 Term Rep. 668. In criminal cases, we will not intentionally inflict new hardships on any one, let our individual feelings be what they may. To satisfy our minds in this particular, my brother Yeates and I have made diligent and painful researches into the books of entries, on the criminal law. The result of our inquiries has been as follow :
In Rex v. Oates, 5 St. Tri. 4, the indictment for perjury charges him, that he falsely, voluntarily and corruptly did say, &c. So on the second indictment against him. Ib. 70. In Rex v. Sir Patience Ward, 3 St. Tri. 661, the information states, that he falsely and corruptly did swear, &c. In Rex v. Elizabeth Canning, 10 St. Tri. 206, the indictment charges, that she did falsely, wickedly, voluntarily and corruptly say, &c. In Tremaine’s Pleas of the Crown, pa. 136 to 167, there are thirteen indictments for perjury, all of which are laid with the epithets (or some of them), falsely, corruptly, maliciously and voluntarily, &c. In Stubb’s Crown Circt. Comp. 308 to 334, there are seven indictments with the same epithets, applied to the acts of swearing. So in Clift’s Entries 399, 401, there are two informations for perjury at the assizes, that the defendant maliciously, voluntarily and corruptly swore, &c. And in Rex v. Greepe, 5 Mod. 343, an information at common law for perjury in a trial at bar in replevin, charges the defendant, that he falsely, maliciously, voluntarily and corruptly, on his oath, said, See. In Co. Ent. 164, b. 357, a. there are two precedents of actions brought in debt, on the Stat. 5 Eliz. c. 9, wherein it is laid, that the defendants voluntarily and corruptly swore, &c. And so in many other actions of debt in other books.
On the other hand, in the same book 165, b. there is a form in a deposition before commissioners on interrogatories in Chancery, wherein the epithets are not used. So in Rast. Ent. 481, the declaration lays the swearing without those terms, per quod idem R. voluntarle et corruptive commisitperjurium voltmtarium.
In Officium Clerici Pacis, (a book containing many excellent precedents) fob 87, we find an indictment for perjury in a deposition, resembling the present case in all particulars. It states, that the defendant “being sworn, said and upon his oath affirm - “ed and deposed in manner following, See. Whereas in truth “and in fact, &c., voluntarily and corruptly committed volun“tary and corrupt perjury,’’ &c. Again in West’s Symbol. 119, b. § 160, another form of the same kind occurs for perjury *in a deposition before commissioners by commission out of the court of wards. But in the same book and page, § 161, for perjury in a deposition before commissioners, by commission out of chancery on the stat. of 5 Eliz. after the words, in the indictment, “whereas in truth the said H. S. did not “cause, &c. neither, &c. (negando cffcctum depositionis) prout *416 “ predict. W. false and corrupte deposuit et juravit, per quodf &c. And again Ibid. 138, § 241, an indictment for perjury committed in an answer, -in the exchequer at Chester, states, that the defendant on his oath, “said affirmed and swore these English “words following, &c. and so the said R. in making and con- “ firming his answers in that part aforesaid, the day of “at, &c. voluntarily and corruptly committed voluntary perjury,” &c.
It is evident therefore, that the forms of indictment at common law for perjury, are not uniformly the same ; but the words, falsely, corruptly and wilfully, as applied adjectively or adverbially to the act of swearing, are mere expletives to swell the sentence, in the language of Lord Hardwicke. 1 Atky. 50.
We find no adjudged case or dictum in the books, that such words are appropriate terms of art, descriptive of the crime of perjury, at common law, as imirdravit in an indictment for murder, cepit in larceny, mayhcmiavit in mayhem, feloniee in felony, &c. 2 Hawk. c. 25, § 55. On the contrary, we do find it laid down by the judges, that an indictment for perjury at common law, does not require so much certainty as on the statute, and that it need not be in a court of record, or matter material to the issue. 5 Mod. 348. 1 Sid. 106. And in Cox’s case, (Leach 69,) it was agreed by ten judges -unanimously, that the word wilfully, was not essentially necessary in an indictment for perjury at common law, though it was essential in an indictment for perjury under the stat. of 5 Eliz. c. 9, because the term wilful in the statute, is a material description of the offence. Still it is necessary, that it should appear by the indictment, that the oath was wilfully false.
It will readily be agreed, that all indictments must have a precise and sufficient certainty, and that the offences must be set forth with clearness and certainty. 4 Bl. Com. 305, 6. Every person should be apprised of the distinct charge made against him, in order that he may come fully prepared for his defence. But in the words of the humane Lord Hale, “the great strict- “ nesses and unseemly niceties, required in some indictments,' “ tend to the reproach of the law, to the shame of the govern“ment, to the encouragement of villainy, and to the dishonour “of God.” 2 H. H. P. C. 193.
4. The last reason offered in arrest of judgment, is, that the *indictment is insensible and repugnant, and is defective both in form and substance. This objection being made [*417 in general terms, must necessarily refer to the supposed defects, before particularly specified and already considered.
Upon the whole, on the best consideration, which my brother Yeates and I have been capable of giving to the different reasons filed in arrest of judgment, our official duty constrains us to say, that they are not relevant in point of law, and that the commonwealth is entitled to judgment.
*417 Judgment, that the defendant pay a fine of one hundred dollars, and be imprisoned for the term of six calendar months, and until he shall have paid the said fine and the costs of prosecution.