# General Sessions.

## NEW-YORK, DECEMBER TERM, 1824.

$$\left.\begin{array}{c}\textit{The People} \\ \text{v.} \\ \textit{James Robertson.}\end{array}\right\} \text{PERJURY.}$$

RIKER, Recorder.

THE defendant in this case has been convicted of perjury. He made an affidavit in the Police Office, on the 23d of July last, before Henry Abell, one of the Police Magistrates, in which he charged one Isaac Bishop with having stolen fourteen sacks or bales of wool, of the value of one thousand dollars. It is now moved to arrest the judgment on two grounds :

1st. Because the deposition is not in due form of law.

2d. Because the indictment is defective.

The first objection to the deposition is, that the defendant has been made to swear to a *conclusion of law*, and not to mere facts. The counsel for the accused say, that such a general oath is not conformable to law ; that the magistrate ought to take the facts only from the witness, and then determine, whether in judgment of law, those facts, so sworn to, constitute a felony or not ; that to require a witness to draw the conclusion of law, is wrong ; that it goes beyond the power of the magistrate, and vitiates the oath.

To enforce this objection, the counsel have urged, that if it be referred to a prosecutor to determine whether a person be guilty or not of a particular crime, the bulk of mankind will fall into mistakes, and swear

falsely. Many persons, it is urged, would suppose, that to steal fruit from trees—grapes from vines—corn growing in the fields—lead or other fastenings from houses—potatoes or other vegetables growing in the ground, would amount to larceny ; and if required to swear to a conclusion of law, upon such a state of facts, would swear that such an offence constituted a felony. Whereas, every lawyer knows it to be a trespass only, (4th Blac. 232.)—To steal dogs of any description, is no larceny. (4th Blac. 234. 1 Hale, 511.) Yet many would not hesitate to swear that a person who stole a dog was guilty of larceny. They would be surprised to be told, that to steal a goose, a duck, or a chicken, is a felony ; and that to steal a very valuable dog is no felony, but a mere civil injury. Yet so is the law.

Hence it has been urged, with great force, that to made a witness swear to a conclusion of law, is calculated to entrap an honest man, and lead him to swear to a falsehood, and consequently that such an oath is illegal.

There is no doubt that to constitute the crime of perjury, the oath must be a *lawful oath ;* that is, such an oath as the magistrate is authorized by law to administer to a witness. If therefore justice Abell was not authorized to administer to the defendant the oath upon which the perjury has been assigned, the conviction cannot be supported.

By the statute of our state, organizing the police of our city, the magistrates of the police are denominated special justices, " for preserving the peace in the city of New-York, and shall, within the said city, execute the like authorities, which are by law vested in justices, as conservators of the peace." (Rev. Laws, 350.)

NEW-YORK,
1824.

The People
v.
Robertson.

NEW-YORK,
1824.

The People
v.
Robertson.

By the second section of the act, entitled "an act declaring the *powers* and duties of the justices of. the peace, (2 Rev. Laws, 507.) justices of the peace are cloathed with power to examine and commit persons charged with felony, and to take the information of witnesses and reduce the same to writing, and bind over such witnesses to appear and prosecute. And Lord Hale, 1 vol. H. P. C. 109. says, expressly, that a justice of the peace before he issues a warrant to arrest a person charged with a felony, should examine, *upon oath,* the party requiring the warrant. The counsel for the defendant do not, in fact, dispute the right of the magistrate to administer an oath in a case of felony. It is only to the form of the oath to which they object. (2 H. P. C. 119.)

Notwithstanding the objection to the form of the affidavit, it is to be observed, that it has been in general use both here and in Great Britain, for a great length of time. Chitty, in his precedents, vol. 4. p. 1—6. gives a number of depositions, in substance the same as that taken by the present defendant. Lord Hale, who wrote his Pleas of the Crown upwards of 150 years ago, says, (vol. 1. p. 531.) that the party applying for a warrant against a felon may swear "*that he doth suspect, or* KNOW, *J. S. to be the felon;*" and "if the charge of the felony be *positive* and express," then the witness must be bound in a recognizance to prosecute, before the warrant issues. Whether, therefore, we regard the long and continued use of the present form of depositions, or the precedents cited in Chitty, or the authority of Lord Hale, the objection raised to the affidavit, that the defendant has been made to swear to a conclusion of law, must be over-ruled.

Nor is there the hardship that has been complained of. If a man should swear, through a mistake, that A. was guilty of a felony, it would be no perjury, because to be guilty of perjury, he must swear *willingly and knowingly* to a falsehood.

In the present case, the defendant swears also " that be has cause to suspect and does suspect," that the wool was stolen by Bishop. The indictment alleges that he had not cause to suspect, and did not suspect that the wool was stolen by Bishop. The jury have pronounced the charge in the indictment to be true. Whatever doubts may have once existed, it is now clearly settled that a man may be " convicted of perjury in swearing that he *believes* a fact to be true which he knows to be false." (2 Russ. 1753, 1754.) On this ground also the conviction of the defendant is regular, and supported by adjudged cases.

The court would here mention, that it is a common error into which many persons, and even magistrates have run—that a person has a right to demand a warrant against another if he will swear positively. The law is not so—The magistrate has a right to inquire into all the circumstances, and to satisfy himself. (2 Hawk. 4, 5, and 6. and note [5] 3 Hawk. 180. section 18.) All that he has to take care of, is to act with integrity and good motives.

The second exception to the deposition is, that the theft is not charged to be done "*feloniously.*"

There is no doubt that according to the usual and legal forms, the affidavit ought to have charged the stealing to have been done feloniously. The error happened by using an old blank form which was in the police office. It is true, that the word *stealing* is generally

understood to mean a felonious stealing ;—but it does not *ex vi termini*, convey the charge of felony,—because it is clear, from the authorities already referred to, that a person may *stéal* a dog, and other animals kept for pleasure, grain growing in the field, affixtures to houses and the like, and yet not be guilty of a felony.

Great stress has been laid upon this objection by the counsel for the defendant. They have cited several authorities, and rely with confidence on the omission of that important charge in the affidavit, that is, that the act was done *feloniously*.

If the counsel for the defendant could have shown that the same strictness was required in an affidavit, charging a person with a crime, as is necessary in an indictment, then, undoubtedly this objection must have prevailed. In an indictment whether the act done, be a felony at common law, or be made so by statute, in either case the indictment must charge the act to be done *feloniously*. The precedents for stealing choses in action, and for forgery, which were not felonies at common law, are in consent with this rule.

It is, however, very clear, that commitments for felony are good, without stating the act to be done " feloniously"—(Rex v. Judd, 2 Term, 255. ; 3 Hawk. 237. note 6.) A commitment is good without stating that the party is charged upon oath—(3 Hawk. 237.) And in the case of Van Steenburgh v. Kortz, (10 John. 169) the Supreme Court says, " that the better opinion seems to be, that perjury may be assigned in an *erroneous* oath."—Judge Spencer dissenting from the opinion of the Court.

As there is, however, some doubt upon this part of the case, and it may not be absolutely necessary to

decide upon the objection, the court will proceed to no-
tice the several exceptions which have been taken to
the indictment.

Before I do this, let me premise, that the strictness
which is observed by the courts, in criminal proceed-
ings, and which is sometimes complained of, is only in
obedience to the positive injunctions of the legislature.
They have expressed themselves too plainly to be mis-
understood. They have enjoined it upon their criminal
courts to adhere to all the strictness of the common
law; as if they meant to mark their opinion, that no
relaxation in criminal proceedings could take place, ex-
cept by positive law, they have themselves made one
exception; they have declared that the words "with
force and arms," or any such words, shall not, of ne-
cessity, be put in any indictment, (1 Rev. L. 497.)
This relaxation the legislature have made! and they
have made no other. In the act concerning amend-
ments and jeofails (1 Rev. L. 122.) it is expressly de-
clared, that the provisions of that law shall not extend
to "any indictment or presentment of felony, murder,
treason, or *other matter.*" It is plain that no intend-
ment can be made, nor any defect supplied, except
what might be done at common law. (4 Hawk. ch. 25.
T. 97. p. 59.)

The first exception to the indictment is, that there is
a variance in the style and description of the magistrate.
The act designates him "a special justice for preserv-
ing the peace in the city of New York;" and the in-
dictment describes him "*one of the special justices,*" &c.

The second exception is for a variance in the des-
cription of the office in which the oath was taken. The
act denominates it "the police office in the city of New-

NEW-YORK,
1824.

The People
v
Robertson.

York." (2 Rev. L. 350, sect 22.)   The indictment. calls it " the office of the police justices in the City Hall of the city of New-York, in the 6th ward of the said city."

The law which governs these two objections has been fully considered in the case of Lewis v. Few, 5 John. 1—37.

Mr. Justice Thompson recognizes as law the decision in the case of the King v. May, 1 Leach, 227.—that was a case of perjury, where in reciting an indictment, the word *despaired* was wholly omitted. Yet the objection of variance was overruled. So in the King v. Lookup, (1 Term, 240,) which was also a case of perjury where the indictment alleged the bill in Chancery to be directed " to Robert LORD Henley," whereas it was directed " to Sir Robert Henley, Knight ;" and yet the objection was overruled.   And Justice Thompson concludes by saying, that you must look at the context in order to judge of the materiality of the variance. In the case before them, the court held that *U. States* might be read for *United States.*   Under these decisions, this court is of opinion that the two objections taken to the indictment, on the ground of *variance,* must be overruled.

Third exception.—It is objected to the indictment, that it does not allege a *charge of felony, or any judicial proceeding pending,* which, it is urged, is necessary in order to give the magistrate jurisdiction.

There is no doubt, that to constitute the crime of perjury, the oath must not only be a *lawful* oath, but it must be taken in the due *course of justice,* and by a court or magistrate having competent jurisdiction.

The answer, however, to this objection was satisfac-

torily given by the learned counsel associated with the district attorney. He shewed that the precedent in Arch. p. 313, a book relied on by the counsel for the defendant, sustained the present form of indictment. So does the precedent in Crown Cir. Ass. p. 213. In 1st Term, 70, (the King v. Aylet,) Lord Mansfield says, " His own oath was the complaint." So here—his *own oath was the charge of felony.* It was itself the judicial proceeding, and under the rule laid down by Lord Mansfield, nothing more than his own oath was necessary to be set out in the indictment.

This point was decided more than twenty years ag⁰ in the Supreme Court of Pennsylvania, in the case of the Commonwealth v. Robert Newale, Esq. (3 Yeates, 407.) One of the exceptions taken was as follows :— " That the affidavit, on which the perjury is assigned, is stated to be on an interrogatory filed between the commonwealth and the defendant, on the part of the commonwealth, *without stating any proceeding between the commonwealth and the defendant, in which the said affidavit would be material.*" This exception was overruled : that case governs this ; and consequently that objection, relied upon by the defendant, falls to the ground.

The fourth exception to the indictment is, that it does not contain an averment that the fact sworn to was material. This objection admits of a plain answer. Every affidavit, if drawn in due form of law, shows the materiality of the fact upon the face of it. Any averment, therefore, is idle. To use the expression of Lord Mansfield in the case just cited, 1st Term, 70.—" The complaint cannot be distinguished from the material question. The material question is the gist of that which he swore." So in Charles Tomlinson's case, decided

by his honor the late mayor, (Mr. Colden) Oct. 1819, it is held, that though it must appear "from the *matter* spread on the face of the indictment that the oath was material, yet it is not necessary that it should be expressly averred in the indictment that such oath is material." (4th vol. City Hall Reporter, p. 125.)

But what puts this matter beyond all doubt is, that the precedents of indictments upon affidavits never contain an averment that the facts stated in such affidavits are material. The indictments state, that the affidavits were duly made before a competent authority, setting forth the *tenor* or substance of it, and then falsifying such parts as are alledged to be untrue. These precedents being uniform and undisputed, shew what the law is. This objection, therefore, raised by the counsel of the defendant, is untenable, and must be overruled.

Thus every objection which has been raised and discussed, whether to the affidavit, or to the indictment, has been fully considered by this court. It appears clear, by the examination which we have given to those objections, that, with the exception of one, they cannot avail the defendant. Allow them their greatest force, yet when tested by adjudged cases, they could not aver the sentence of the law ; and as the Supreme Court in the case of Van Steenburgh v. Kortz, (10 John. 169.) held "that perjury may be assigned in an oath erroneously taken," we cannot perceive that if this court should overrule the only objection upon which there seems a doubt, that the defendant could rightfully complain

If, however, there be any other exception apparent upon the face of the record, and which authorizes the arrest of judgment, it is the duty of the court to give

the defendant the benefit of that exception. Hawkins,
b. 2. ch. 31. sec. 4. vol. 4. p. 240, says, the judges are
bound, *ex-officio*, to take notice of all such faults.

At the close of the very able discussion which took
place in this case, a question arose, whether this indict-
ment, being founded upon an affidavit in writing, ought
not to have set forth that fact, and also the tenor or sub-
stance of such affidavit, and for want thereof, whether
the judgment must not be arrested?

If a fatal defect shall, upon examination, be found,
arising from the omission referred to, it is due to the
district attorney, and to the learned counsel engaged on
the side of the prosecution, to state that the indictment
was framed by one of the acting counsel, at the heel of
the session, and in haste submitted to his associate coun-
sel. No blame is, therefore, to be imputed to any one.
The prosecution and the defence has been conducted
with zeal, fairness, and very great ability.

I now proceed to consider the question, whether the
present indictment be defective in omitting to set out,
that the defendant made an affidavit in writing, and
whether it be defective inasmuch as it does not purport
to give either the *tenor* or the *substance* thereof?

I shall examine this question upon principle, upon
precedent, and upon authority.

Upon principle, every man accused of a crime, ought
to be informed distinctly and clearly what is alleged
against him. The offence for which he is to be tried,
ought to be so clearly set out that he may know exactly
the charge which he is to meet. This principle has its
foundation in the unchangeable laws of universal jus-
tice. In consent with this rule, one of the greatest wri-
ters upon criminal law, says, " that the want of a direct

NEW YORK,
1824.

The People
v.
Robertson.

allegation of *any thing material* in the description of the substance, *nature*, or *manner* of the crime, cannot be supplied by any intendment or implication whatsoever—4 Hawk. 31. B. 2 ch. 25. section 60." Lord Mansfield says, " in a *criminal* charge, there is no *latitude of intendment*, to include any thing *more* than is charged : The charge must be explicit enough to *support itself*. 2 Bur. 1127.

It is then material that the oath taken in the police office, should have been in writing?

Lord Hale, I vol. 586, says, "he [the magistrate] must take information of the prosecutor, or witnesses in writing, upon *oath*, and return the same to the next session of oyer and terminer."

The statute of our state, creating the police office, says, " that it shall, among other things, be required of the said clerk (that is the clerk of the police office) to reduce to writing ALL *examinations and depositions*." (2d vol. Rev. L. 357.)

It is plain, therefore, that the oath ought to be in writing, and so in truth it was. Being a *material fact*, it ought to have been so charged in the indictment. In other words, to reduce the law to common sense, the defendant, Robertson, should have been told, " you are charged with perjury—you have committed the crime of perjury, in swearing to the affidavit, and here is a copy of it."

Instead of using this plain charge against the defendant, which would have apprised him of every thing he had a right to know, the indictment leaves out altogether any allusion to the affidavit, and instead thereof, charges that he " did say, depose and swear." Now, none of these words signify that an affidavit in writing was taken ; and if they did, the court would violate the law, by assuming the fact by implication or intendment.

Upon principle, therefore, it seems to be just, that if the defendant is to be condemned and destroyed, as must be the case if he be sent to the state prison; he ought to have been informed by the indictment, which is the only legal notice that he can have, that he has perjured himself by swearing to a certain affidavit, of which he is furnished with a copy or the substance thereof.

I now proceed to examine the question upon precedent. Precedents, or forms of indictments, which have been long used and stand uncontradicted, are the highest evidence of what the law is. Wherever an important principle of criminal law is referred to the discretion of the judges, they ought to consult the precedents. Hawk. 4 vol. p. 33. B. 2. ch. 25. sect. 61. speaking of the essential parts of an indictment, says: " The judgment hereof cannot but be in a great measure left to the discretion of the judges, who, from the circumstances of each particular case, the *comparison of precedents*, and the plain reason of the thing, seems always to have endeavoured to go within these rules as nearly as possible."

The precedents are uniform. The books, both ancient and modern have been examined ; all the indictments for a perjury upon an affidavit, state the charge in one of two ways, either that he did corruptly say, depose, swear and make *affidavit in writing* (amongst other things,) in substance and to the effect following, that is to say, setting out the affidavit—(Crown Cir. Com. 587.) —or that he did produce and exhibit a certain *affidavit in writing*, to which he swore, and then set it forth, in substance and to the effect following, that is to say— (Crown, Cir. Com. 588. 590.) The indictment in the present case, departs from the established forms. If,

NEW- YORK'
1824.

The People
v.
Robertson.

therefore, we consign Mr. Robertson to the State Prison, we must do so under a form of indictment hitherto unknown to our law.    To this I am opposed.    I do not believe that the courts, unless authorized by the legislature, have the power to change the forms of criminal proceedings.    I agree also with the saying of a very enlightened man of our own country, that forms are the handmaids of justice.

The same rule prevails in analogous cases.    In forgery, the instrument alledged to be forged, is set forth in the indictment.    So, for sending a threatening letter, the letter must be set out.    So, for a libel, the libel must be spread out in the indictment.    And so strict is the law, in this respect, that if the libel be in a foreign language, you must set out the original.    If a translation only be set out, the judgment must be arrested. (Zeno Count Zenobiov. Axtell 6 Term. Ref. 162.)

I will now examine the question upon authority: this will be short.    I find but one adjudged case which bears upon the subject.    It is the case of The King v. Geo Crossley, Esq. (7 Tom. 315.) Crossley was an attorney of the King's Bench, and defended by Mr. Erskine and Mr. Garrow.    It is, therefore, to be presumed, that every legal exception would be noticed.    The indictment was for perjury in an affidavit, and the exception taken was, that it was not alledged that the affidavit was filed of record.    The matter lay over a whole term. The court decided against the exception, ruling that it was not necessary that the affidavit should be filed.    Now, if the present form of indictment was correct, the court might have put an end to the question at once, by saying, it is not necessary to state that an affidavit in writing was made at all.    Instead of saying this, Lawrence,

Jus. says, "I have looked with great attention through a variety of precedents, manuscript as well as printed, and I do not find that it was stated in any one instance that the affidavit was used. It is stated in them, that when the party swore, he exhibited the affidavit to the person or the court before whom it was sworn, and that the contents of it were false. The common form is, *that he came before the person or the court, and exhibited the affidavit or paper writing,* that person or court having competent authority, and then assigns the perjury. (7 Term. 320.)

The indictment, therefore, against the present defendant, not conforming to the general principles of law, or to the established forms of criminal proceedings, will not in the opinion of this court, warrant a judgment to be passed upon it.

If, however, the district attorney, or the learned counsel associated with him, are of opinion that the present form of indictment can be supported, or if they think proper to prefer a new bill of indictment, in either case, the matter may be put in such a situation as to obtain the solemn decision of the Supreme Court.