## Haughey *against* Strickler.

In a suit against partners on a promissory note, alleged to be the note of the defendants, and proved to have been executed by one of them, the plaintiff may read the note to the jury, and afterwards proceed to prove that the others were bound by it as partners.

It is no answer to evidence that it does not prove the plaintiff's whole case: if it is a link in the chain of the evidence afterwards to be given, it is admissible.

The successive acts and declarations of each of several defendants, showing their partnership, are equivalent to a joint declaration to that effect by all, and may be given in evidence separately.

In a suit against partners on notes given by one for lumber furnished them to erect a bridge for a company, *held* that the minutes of the company were admissible to show an allotment of the bridge to the defendants by the company, in connection with proof that they went on with the construction of the bridge in pursuance of such allotment.

ERROR to the Common Pleas of *Montgomery* county, where a verdict and judgment were rendered in favour of Jacob Strickler, in an action of *assumpsit* brought by him against John Haughey, James Steel, James Wells, and William Moore, lately partners, doing business under the name and firm of Haughey, Steel & Co.

The plaintiff declared on two promissory notes, signed Haughey, Steel & Co.—one dated February 25th, 1839, for the payment of $350, at 30 days; the other, of the same date, for $396, at 60 days—and also for goods sold and delivered. The defendants pleaded *non assumpsit*, and payment with leave, &c.

The plaintiff alleged, and gave evidence to establish, that the defendants, in the year 1838, undertook, as partners, to erect a bridge for the Matson's-Ford Bridge Company, and that he furnished them with lumber from his saw-mill for that purpose. That for the amount due for this lumber, these notes were given by Haughey, who, in using the name of Haughey, Steel & Co., meant the defendants, there being, in fact, no such name or partnership firm known or used by them. That, in pursuance of their agreement with the bridge company, they went on with the bridge, and received considerable sums of money from the company, but owing to the loss of the lumber by the freshet in the Schuylkill in 1839, did not complete it.

The defendants alleged that there were distinct partnerships, Haughey & Steel to do the wood work, and Moore & Wells the stone work; and showed a subsequent suit brought by the plaintiff against Haughey & Steel alone, which was still pending, and one by Strickler & M'Clure, as partners, against Haughey &

Steel; and a letter to Haughey, Steel & Co., in November 1838, signed by M'Clure for Strickler & M'Clure. But there was evidence also that Haughey & Steel were partners in another bridge over the Norristown Railroad.

1. The plaintiff produced the notes, and proved that the name of Haughey, Steel & Co. was the hand-writing of John Haughey, one of the defendants. The defendants objected to the admission of these notes in evidence, that the plaintiff had not shown such partnership existed; and denied the partnership. *By the Court.* " Plaintiff has declared against the defendants as partners, and the notes purport to be signed by Haughey, Steel & Co. This, in the opinion of the court, is sufficient to admit the notes to be read." To this opinion the defendants excepted.

2. The plaintiff produced a receipt-book, and offered in evidence a receipt dated August 1838, signed William Moore, for Moore, Haughey, Steel and Wells, on account of the bridge, for the purpose of establishing a partnership. This was objected to by the defendants as not being evidence for that purpose; but the objection was overruled, and the evidence admitted, to which the defendants excepted.

D. H. Dager, secretary of the Matson's-Ford Bridge Company, testified that this was the first receipt given on account of the bridge; that he wrote the receipt, and Moore signed it; and that it was for money paid on account of the contract for the bridge.

3. The plaintiff also offered in evidence, for the same purpose, the following receipts, in the same book; to which the defendants objected on the same ground; but their objection was overruled, and the evidence admitted, and exception taken by them:

2d receipt, dated September 1838, for $1613.04, signed William Moore, for Moore, Wells, Haughey and Steel.

3d receipt, dated October 13, 1838, for $300, signed William Moore, for Moore, Wells, Haughey and Steel.

4th, dated November 13, 1838, for $739.40, signed James Steel, for Moore, Wells, Haughey and Steel.

5th, November 17, 1838, for $679.44, signed William Moore, for Moore, Wells, Haughey and Steel.

6th, December 12, 1838, for $982.12, signed James Wells, for Moore, Wells, Haughey and Steel.

7th, December 12, 1838, for $182.28, signed William Moore, for Moore, Wells, Haughey and Steel.

These receipts were also proved by Dager.

4. The plaintiff then offered to prove by Dager that the bridge was allotted to Moore, Wells, Haughey and Steel; that in pursuance of that allotment they went on with the work; and for this purpose produced and offered the minutes of the Matson's-Ford Bridge Company, in Dager's hand-writing. The defendants objected to this evidence, but the court admitted it, and the defendants excepted.

[Haughey v. Strickler.]

5. The plaintiff then produced his book of original entries, and testified : " This is my book of original entries of lumber sold at saw-mill. James M'Clure made the entries. He died last May," and proved that the entries were in M'Clure's hand-writing — that the plaintiff owned the mill, and M'Clure conducted the business for him.

The following entries were then read :

August 15, 1838. — Haughey, Steel & Co., Dr. to Saw-mill :—
        95 cords 32 feet long, 3 by 12,
       101 braces 22 feet long, 3 by 10,
   15225 feet at $16, delivered, . . . . . $243 60

September 12, 1838. — Haughey, Steel & Co., Dr. to Saw-mill :
      165 cords 32 feet, 3 by 12,
      206 braces 22 feet, 3 by 10,
      Making 27170 feet, at $16, . . . . . $434 72

October 15, 1838. — Haughey, Steel & Co., Dr. to Saw-mill : .
      190 cords 32 feet, 3 by 12,
      131 braces 22 feet, 3 by 10,
      Making 25445 feet, at $16, . . . . . $407 12

The defendants objected to the admission of these entries, that it did not appear that the book produced was the book of the plaintiff; but the court admitted them, and the defendants excepted.

The following errors were assigned :

1. The court erred in admitting the evidence referred to in the first bill of exceptions.

2. The court erred in admitting in evidence two notes, signed " Haughey, Steel & Co.," before it was shown that a partnership existed between the several defendants.

3. The court erred in admitting a receipt (produced by Daniel H. Dager, a witness), dated August 1838, signed by William Moore for Moore, Haughey, Steel and Wells, as evidence to establish a partnership between the defendants.

4. The court erred in admitting the evidence mentioned in the second bill of exceptions.

5. The court erred in admitting the evidence mentioned in the third bill of exceptions.

6. The court erred in admitting the evidence mentioned in the fourth bill of exceptions.

7. The court erred in admitting the minutes of the Matson's-Ford Bridge Company for the purpose mentioned in the fourth bill of exceptions.

8. The court erred in admitting the book purporting to be the plaintiff's book of original entries, referred to in the fifth bill of exceptions.

9. The court erred in admitting the evidence mentioned in the fifth bill of exceptions.

[Haughey v. Strickler.]

*G. Rodman Fox* and *J. Fox*, for plaintiffs in error, contended that evidence should first have been given to show that the defendants were partners, before the notes could be read to the jury; and also that the receipts were not evidence, being the declaration of one partner only, which is not evidence against the rest. Upon these points they cited 10 *Johns.* 66; 6 *Pick.* 464; 2 *Wash. C. C. Rep.* 388; *Gow on Part.* 210; 14 *Johns.* 215.

The book of entries was not evidence. It was only against Haughey, Steel & Co. The minutes of the Board were improperly received. They were the declarations of a third party, and did not show any firm of Haughey, Steel & Co., but that of Moore, Wells, Haughey and Steel.

*Sterigere* (with whom was *Freedley*), *contra.* The name is unimportant. The question is, were they partners? If the name was wrong, it should have been pleaded in abatement. 17 *Serg. & Rawle* 165. Where no name is agreed on, any name may be used. The order of giving in evidence the declarations of each partner is not material. 3 *Watts* 101; 6 *Whart.* 146. The receipts were admissible to show partnership. 17 *Serg. & Rawle* 453; 2 *Watts* 347; 3 *Watts* 105.

The book of the plaintiff was evidence. 9 *Serg. & Rawle* 285; 1 *Binn.* 234.

The opinion of the Court was delivered by

SERGEANT, J.—This suit was brought against Haughey, Steel, Wells and Moore, on two promissory notes, and for goods sold and delivered. The notes were given by Haughey, and signed Haughey, Steel & Co. The plaintiff was bound to prove that the notes signed Haughey, Steel & Co., were the notes of the defendants, or in other words, that Haughey had authority as their partner to bind them, and that it was so intended and understood. The plaintiff accordingly went into evidence of the existence of the partnership of the defendants for the purpose of erecting a bridge for the Matson's-Ford Company, that the notes were for lumber furnished by him to the defendants for that purpose, and of the acts and declarations of the defendants respectively, in relation to that concern. It did not appear in the evidence that there was any such firm as that of Haughey, Steel & Co.; on the contrary, the principal witness for the plaintiff did not know of the firm of Haughey, Steel & Co., but he thought the name of the firm was Haughey, Wells, Steel & Moore. It would seem that no partnership name in fact existed. They might, therefore, be bound by one name as well as by another, the real question being, whether the name used embraced the defendants, which could only be ascertained by determining whether the defendants were partners in the transaction for which the debt was incurred, and the persons intended to be bound, and actually bound by the

[Haughey v. Strickler.]

partner who signed. No exception was taken to the charge of the court, and it is not brought up before us. Of course, we must presume the merits of the case were left properly to the jury, both as to law and fact. The case comes up on bills of exception to evidence.

The first exception is to the admission in evidence of the promissory notes, on the ground that the plaintiff had not shown that such partnership existed, and the partnership was denied. This was rather a question as to the order of giving evidence than of its admissibility. Distinct matters, forming separate links in a connected chain of title, often cannot conveniently be given in evidence together. It is no answer to evidence, that it does not prove the plaintiff's whole case; if it is a link in the chain of the evidence afterwards to be given, it is admissible. *Johnston* v. *Warden*, (3 *Watts* 104). Here the plaintiff might be allowed to produce his notes, which were proved to have been signed by Haughey, and were the basis of his action, and then to call evidence to show their obligatory effect on the other defendants also. If he failed in the latter, no injustice would be done, as it would be the duty of the court to instruct the jury that the plaintiff must fail in his suit.

The second and third errors turn very much on the same principle as the former. The receipts were objected to as being signed by one of the defendants only. But if the plaintiff was able to show receipts in the names of all, signed by each of the defendants, this would go to establish the alleged partnership. Although the acts and declarations of one defendant going to show partnership, are not evidence against the others, yet they are evidence against himself; and successive proof of the acts and declarations of each to that effect, may be equivalent to a joint declaration by all at once. *Johnston* v. *Warden*, (3 *Watts* 104).

The fourth exception was to the evidence of Dager, the secretary of the Matson's-Ford Bridge Company, who was offered to prove that the bridge was allotted to Moore, Wells, Haughey, and Steel; and that, in pursuance of that allotment, they went on with the work. It is objected, that the minutes of the Board are not evidence. How that might be if they were offered alone, either in a suit between third persons, or where the company was a party, it is unnecessary to say; for that is not the case here. In addition to the entry or memorandum of the allotment on the minutes, it was offered to be proved that these persons went on with the work in pursuance of the allotment by the Bridge Company. It seems to be a necessary inference from their going on with the bridge in pursuance of the allotment, that they were acquainted with the allotment, and recognised and adopted it. If so, it is the best evidence to show the nature and terms of the contract between them and the company.

The fifth exception was to the plaintiff's book of entries: it

[Haughey v. Strickler.]

being alleged that it did not appear this was the plaintiff's book. I perceive no ground whatever for this allegation. The record shows the plaintiff's oath that it was his book of original entries of lumber sold at the saw-mill, and that the entries were made by M'Clure. Another witness states that M'Clure was dead; that the plaintiff owned the mill, and M'Clure conducted his business.

Judgment affirmed.