# Commonwealth of Pennsylvania *v.* S. A. Johnston, Appellant.

*Druggists—Unlawful sales of liquor—Act of 1887.*

A person, not a druggist, employing certified pharmacists to conduct a retail drug business purchased by him, is liable under the provisions of the Act of May 24, 1887, P. L. 189, for unlawful sales of liquor if such sales or furnishings are made with his knowledge or consent.

*Druggists—Illegal sale of liquor—Evidence of possession of liquor.*

Where a druggist is charged with unlawful sales of liquor, the possession of a large amount of whisky in defendant's cellar is a link which, if connected with other links, would constitute a chain of evidence which would justify conviction.

Evidence of possession of whisky in considerable amounts by a druggist is therefore admissible; it is not essential that the relevancy of an offer appears at the time; if it is not subsequently connected with the issue it can be laid out of the case.

*Liquors—Illegal sales—Evidence of amount of whisky in stock.*

There being no fixed standard as to the amount of whisky which may be legitimately used in a retail drug business, evidence by other druggists that a druggist charged with illegal sales kept on hand a stock in excess of legitimate needs as measured by the business conduct of the respective witnesses, is inadmissible.

*Practice, Superior Court—Defective assignment.*

An assignment of error is defective and will be overruled which assigns as error the admission of a letter which is not set out in the assignment.

Argued May 12, 1897. Appeal, No. 83, April T., 1897, by defendant, from judgment of Q. S. Butler Co., Sept. T., 1896, No. 54, on verdict of guilty. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER and ORLADY, JJ. Reversed.

Information for selling liquor without a license; selling and furnishing liquor on Sunday; without a prescription and selling more than once on the same prescription. Before GREER, P. J.

It appeared from the evidence that the defendant purchased a drug store in Butler, Pa. Not being a qualified pharmacist he placed in charge of his store C. E. Kahle, a duly qualified pharmacist registered as required by law, who had as his assistant Charles Wuller. There was evidence tending to show that Johnston had instructed these employees as to the business intrusted to them and particularly as to the sale of liquors. There was also evidence tending to show on behalf of the commonwealth that a large amount of whisky was purchased and held and used in the defendant's business; that there had been sales without a prescription, on Sunday and to persons of known intemperate habits, both by the clerks and by the defendant himself; that the defendant's conduct and instructions showed that he was acquainted with the unlawful sales made in the store.

Verdict of guilty and sentence thereupon, to pay the costs of the case, a fine of $1,500, and to undergo imprisonment in the county jail of Butler for the term of seven months. Defendant appealed.

*Errors assigned* among others were (6) In answering defendant's tenth point, which point and answer are as follows : " The defendant being by law compelled to employ legal pharmacists, and these being accredited and accepted by the commonwealth, he is not charged with either the knowledge or visited with the crime of his clerks. *Answer :* If the unlawful sales or unlawful furnishing was with the knowledge and consent of the defendant, refused; if without his knowledge and consent, affirmed." (7) In receiving the following testimony of J. F. McClaren: "How much? What did the sales amount to each

day? Objected to; the question of how much liquor is sold in a day is irrelevant and incompetent for any purpose; the question being the specific sales that were made and to whom. By the Court: We will receive it. Q. State how much was sold each day. A. I couldn't state that. Q. Approximate. A. The sales generally ran from twenty-two dollars up to thirty or forty dollars a day, but it was occasionally that they would get up to forty dollars, but on an average while I was there the sales averaged some twenty dollars a day; it was under thirty dollars; I would not be positive. Q. What do you mean by that? A. I mean the entire sales of the store. Q. What proportion of that was liquor? Objected to. A. I wouldn't have any way of telling because it was all kept together." (8) In receiving the following testimony of J. F. McClaren: " Q. Can you tell us how many barrels of liquor were sold in that store while you were there? Objected to as incompetent and irrelevant. By the Court: If he has prescriptions to cover it he is not guilty; I think we will receive that. A. I don't know that I could state exactly. Q. Approximate as near as you can. A. I would say in the neighborhood of four or five barrels." (9) In receiving the following testimony of George Wampler: " Q. What do you know with regard to the mode of putting up liquor in the store? A. I went in one evening on a Sunday afternoon; I went in and walked back and they had some bottles standing on the table and I asked the clerk what they were going to do with them— Objected to; any conversations between the clerk and him. By the Court: We will receive it. Defendant objects to any conversation between the witness and the clerk or whoever it may be in the store in the absence of the defendant as being merely hearsay and not competent and relevant. By the Court: We will receive this; it is for the jury to say whether the doctor had knowledge of the transaction or whether the clerk was acting under the doctor's instructions. By the witness: I saw some bottles on the table in the rear of the store and I asked what he was going to do with them, and he replied, we are going to fill them; I says, with what? He says, with the contents of that vessel; and I says, what is it? And he says, smell it, and I got down and noticed what it was, and I said, you are doing some business, and the remark was made, if business keeps up before we

close to-night we will get rid of them. Q. What day was this? A. On a Sunday afternoon. Q. How much in quantity was there? A. I suppose there was two dozen pint bottles; I didn't count them. Q. What clerk was that? A. Mr. Kahle; he was there clerking at that time. Q. Did you ever have any conversation with Dr. Johnston with reference to the liquor business, the amount he was doing, that he would get into trouble? A. So far as I can recall he was going to order a quantity of liquor, and I said, well, that is quite a quantity for a drug store. Q. How much was it? A. I don't recollect whether three or five barrels; I think the doctor said he was going to get it out of bond. Q. About how much? A. Three or five barrels. Q. What was the conversation relative to that? A. That is the only conversation. "Q. What did you say to him? I said that was quite a quantity and it would probably cause trouble; I wouldn't like to get that much whisky as a business man; I don't know whether he said it was part of the business or whether the business was to be made a success." (10) In receiving the following testimony of C. N. Boyd: "Q. In running your drug store in these eight years, about what quantity of liquor is required? Objected to until a legal reason is given for the testimony. It is proposed to prove by the witness on the stand and others in a similar business, that in running a legitimate drug business one barrel of liquor does a year or about that, a larger business than was conducted by Dr. Johnston, and that Dr. Johnston during five months as testified by the witnesses here, consumed a barrel a month in his business. Colonel Thompson: The object being to show that Mr. Boyd sold a quantity alleged to be less than Dr. Johnston, is wholly immaterial; the question is not how much Dr. Johnston sold, but whether he sold without warrant of law, and this testimony would not only throw no light on the question but would confuse. By the Court: I presume that Dr. Johnston expects to go on the stand and deny that he authorized his clerks to make the sales, and against his orders; in that event the amount of liquor bought by him and furnished to his store for sale, if larger or smaller than other druggists in the same town doing a like business, might have some influence on the jury properly as to the doctor's knowledge, and might be proper to be considered by the jury on the question as to whether he permitted

this sale or not; for that purpose only we will receive it and give you a bill of exceptions. The Court: If the doctor does not go on the stand this testimony will be stricken out. Q. In running your drug store what amount of liquor is consumed a year? A. About one barrel in twelve to fourteen months; once it lasted fifteen months." (11) In receiving the following testimony of J. C. Redick: " Q. State in running your business about how much liquor it requires. Same objection as above. The Court: Same ruling. A. I don't know that I can tell you exactly how much; I recollect I was questioned on that the last time; I suppose I had half a barrel on hand; since that I bought one barrel and it is tapped, and I presume it is half in. The Court: About what amount a year? A. I would say in the neighborhood of a barrel; possibly a little over, possibly a little under." (12) In receiving the following testimony of J. F. Balph: " Q. State how much liquor is consumed in your business per year. Same objection as before. The Court: Same ruling. A. I think I use about fifteen or twenty gallons; not over twenty gallons I am sure per year." (13) In receiving the following testimony of Martin Reiseman; Q. Ever haul any whisky for him? A. Yes, sir. Q. How much did you haul? Same objection as above. The Court: Same ruling. A. I made a statement of that the last time the case was up and I think it was about the same." (14) In receiving the following testimony of Martin Reiseman: "Q. Didn't you say that it was twelve? A. I wouldn't really say. Q. Whatever you stated that it was then, you say now? A. I suppose it was put down somewhere; I don't remember what I said any more. (Paper-book shown witness.) Defendant objects to the paper-book being offered to the witness for any purpose. The Court: To refresh his memory. Colonel Thompson: Commonwealth having presented to the witness the notes of testimony taken on a former trial and another indictment for the purpose of refreshing the memory of the witness and to induce him to change the number of barrels he has now testified to, it is objected to as incompetent, argumentative and irrelevant. The Court: The witness having said he could not recollect what his last testimony was, we think it is not out of place to let him see his testimony to refresh his recollection. The Court: What did you say the other time? A. I don't see it here whatever I

answered then; I guess that is right whatever I said. Q. State what it was. A. About a dozen barrels." (15) In receiving the following testimony of Ed. S. Riddle: "It is proposed to show by Mr. Riddle that on a hearing that Mr. Johnston was called as a witness that he testified before the court that from the time he began up until that time he had put in there ten barrels of whisky, and that it was all sold but about a half a barrel. Same objection as before. The Court: Same ruling. Q. You are the court stenographer? A. Yes, sir. Q. You were the court stenographer when a hearing was had before the court in which Dr. Johnston testified? A. Yes, sir. Q. State if at that hearing the defendant, Johnston, testified that he had since he commenced business hauled into the store some ten barrels of whisky. State what amount of whisky he testified to have taken to the store and how much remained there? A. I don't remember exactly what he did say. Q. You have the notes of testimony? A. Yes, sir. (Resumed.) Testimony of Dr. Johnston taken on the 7th day of November, 1896, produced and read by the witness. The Court: How many barrels since the 1st of January have you bought? A. Five barrels. The Court: And five barrels last fall? A. Yes, sir. The Court: All that liquor has been sold on prescription only? A. Yes, sir; to the best of my knowledge. The Court: That is ten barrels since September, 1894, all sold by prescription only? A. There is some there yet. The Court: How much is there? A. Over a barrel, pretty near two barrels." (16) In refusing to strike out the following testimony of Charles Wuller: "Q. Did he have knowledge of sales made on Sunday? Objected to. A. Yes, sir; he had. The Court: Was the doctor present? A. Yes, sir. Defendant's counsel move the court to strike out the answer to the question, Did the doctor have knowledge? this being only an inference, not subject to contradiction; defendant moves to withdraw the answer. The Court: We will refuse that." (17) In receiving the following evidence and ruling: "Commonwealth offers in evidence a letter dated November 5, 1894, written by Dr. Johnston, for the purpose of showing the directions as to the management of this business, for the purpose of effecting his credibility. It is objected to for that purpose. The Court: I think it is competent for this purpose; if the doctor was honest when he got word of

Assignment of Errors.

the two barrels being exhausted, he ought to have inquired
before putting in any more in the store ; let that go to the jury
as regards his testimony. Colonel Thompson: It is objected
to as not competent for any purpose; it does not contradict the
doctor nor does it state any facts inconsistent with his state-
ments on oath or inconsistent with his good faith in the matter,
and it is one of the misdeeds of his clerks or pharmacist, if any
there were, and is not competent for any purpose. The Court:
The proof shows that he opened a drug store on the 23d of
September, 1894; this letter is dated November 5, 1894, less
than two months after the opening of his store, and we think it
is proper to go to the jury for whatever weight it may have in
testing his good faith and his veracity, and the letter is received."
(18) In instructing the jury as follows : " There is no doubt here
but that there has been great violation of the law in this drug
store by somebody; no doubt that there has been an outrageous
disregard of law, and outrageous sale of whisky in this drug
store. The proof in this case warrants you in coming to that
determination, that somebody in this drug store grievously vio-
lated our law and violated against this particular statute in
selling without license and without prescriptions, and more
than once upon the same prescription and on Sunday; some-
body did it, and it is for you to determine." (19) In instruct-
ing the jury as follows : " The commonwealth in this case places
upon the stand Mr. McClaren first, I believe ; a man who is
not a citizen of Butler county, who does not live in Butler
county, a man brought into the limits of this county upon a
subpoena of the commonwealth of Pennsylvania, and a subpoena,
if disregarded, would subject him to punishment. He is here
because the law has called upon him to come, and he, as a
citizen, has come ; that is why he is here ; he did not begin
this prosecution; he is a witness in this case and he is here
because the law made him come, and he took the oath and went
upon the stand because he was forced to do it by the laws of
this commonwealth and by the power of this court, and to
object or disregard the subpoena or object to the oath or refuse
to testify would be a violation of this law that would place
him in prison and subject him to a fine, and the same law will
apply to Mr. Kahle and Mr. Wuller, and does apply. You
have these three men in this court on compulsion by the force

of the law, against their will, and they testified here upon their oaths that they have undertaken to tell the truth, the whole truth and nothing but the truth. McClaren came upon the stand and he testifies upon a delicate subject; he testifies that he was employed by Dr. Johnston as manager and pharmacist; you heard what he said; you heard his testimony; you heard what he said as regards selling to some men in this town without a prescription, and you heard what McClaren says he said in protest; you heard his statement as to who made the sales, and they were made with the consent and at the request of Dr. Johnston. If that is true, then Dr. Johnston is guilty of every sale made by this clerk; their act became his act, their crime became his crime, and if it is true, then it would be your duty to find him guilty in the manner and form as he stands indicted. You recollect he said some time afterwards that the doctor came in and said to him that it would not be safe to let some of them have it without a prescription, and they had better get one, and you heard what he said he told them to do; if that is true, then the doctor is guilty; he is guilty of every violation of the law made by these clerks under his directions and authority, and with his consent. You heard Wuller's testimony. Are these two men telling the truth? The doctor says it is not. If that is true, then the doctor is guilty, because he authorized the sales and instructed these men to commit this crime, and it would be your duty to find him guilty in manner and form as indicted. Are these men telling the truth? I have no right to hint as to who is telling the truth; you have a right to consider how the doctor got here. The law says you have a right to consider the testimony of the defendant in a criminal case on his own behalf, whether or not his interest in the case might influence his testimony; whether or not the verdict that is to follow might have any influence upon him in making his statement. There has been quite a charge made against these men by the attorneys as criminals, these three men. Had they any interest in their statement or is their statement against their interest? You have a right to consider that. Mr. Kahle was very severely cross-examined and made to understand, or at least it was attempted on the part of the counsel, that his testimony might be against himself. Had these three men any interest in com-

ing in here and making these statements against Dr. Johnston? Would they be benefited by it in any way; is there anything connected with this case that would show that it is to their interest to come here and make statements that were untrue, especially when these statements would tend to criminate them? It is for you to determine. Wuller and the other man said that about the holidays the doctor told them they had better take up the prescriptions, and charged them very particularly then to stand up to the law; they say from that time on they did; that is sustained by the older Johnston boy, Frank; you heard him; the men admit that those instructions were given at that time. The doctor denies their statement, as I said before, and offers witnesses here to prove otherwise. Has he sustained himself and furnished such proof as would break down the testimony of these three men? It is for you to say; I do not." (20) In instructing the jury as follows: "David Niggle went on the stand and he swears he gave the doctor money for a bottle of whisky and the doctor went off and brought it to Miller's store and left it for him and he got it. Unless the doctor was acting as agent for Mr. Niggle and bought the whisky somewhere else but at his own store, then he would be guilty, and the doctor went on the stand and never explained it." (21) In instructing the jury as follows: "The doctor said that he had put ten barrels of whisky into his store from September 23, 1894, up until the time of the hearing in October, 1895; that is his own evidence offered by himself. We allowed the commonwealth's attorney to ask Mr. McClaren, under objection, how much was sold in the four months that he was there, and he said about five barrels were sold in the four months, from September until January. We did this for this purpose, and you will only consider it for this purpose; these clerks said that the doctor authorized them to sell it and told you that they sold it, and the doctor said he did not, and we allowed that to go in solely for the purpose of settling the question of veracity between them, or in other words, of giving you an opportunity to say by the doctor's action whether he wanted to sell whisky against law or not; and I want to repeat it, the fact that it was there was of no account at all so far as unlawful sales are made if not by him or his clerks by his authority, but you can use it for the purpose of determining as

near as you can the doctor's intention. We also allowed Dr. Redick and Mr. Boyd and Mr. Balph to testify as to their sales. You recollect what they said, and we think you have a right to consider this in coming to the determination whether or not the doctor, as a business man, a careful man, an honest man, would not know from the large amount of sales whether or not his clerks were acting lawfully, and only for that purpose. If Dr. Johnston had not gone on the stand we would have ruled out all this testimony, because it does not affect this case only so far as it may lead you to get a correct conclusion as to who is telling the truth, and we also let in the testimony of Mr. Wampler, who said that when the doctor told him he wanted to buy two or three barrels—you recollect what the doctor says he told him. You have a right to take Mr. Wampler's statement as true, as the doctor went on the stand and did not deny it, and that was let in for the purpose of showing to you what were his intentions. What did he intend to do when he got this drug store, and that does not determine whether or not he told the truth, but it goes in the scale for you to weigh and give it such consideration and such weight in this matter as you may think right and just, and as it is worthy of in coming to a conclusion as to the truth of the witnesses." (22) As a whole the charge of the court tends to belittle and prejudice the defendant, and it is not a judicial presentation of the case.

*J. M. Thompson* and *S. F. Bowser*, with them *E. L. Ralston*, for appellant.—The evidence of the other druggists touching the legitimate amount of whisky which could be used in a properly conducted drug business was immaterial and inadmissible. The spirit which prevades the charge and the manner and style of its delivery tend to belittle and prejudice the defendant's suit and in expression and tone it was not a judicial presentation of the case: Coxe v. Derringer, 82 Pa. 236 ; Heydrick v. Hutchinson, 165 Pa. 208 ; Cole v. High, 173 Pa. 590.

*A. M. Christley* and *W. A. Forquer*, with them *A. G. Williams*, for appellee.—There is ample and superabundance of evidence in this case to warrant the jury's finding; it only requires a glance at the notes of testimony as printed in the appellant's

paper-book to convince that illicit sales of intoxicating liquors were made in the drug store owned and controlled by the defendant, Johnston, by himself as well as by his clerks.

OPINION BY BEAVER, J., October 12, 1897:

The first five assignments of error, all of which relate to answers of the court to the defendant's points, have nothing in them worthy of serious consideration. They seem to be abandoned by the defendant in his argument in which he says: " This case involves questions of evidence mainly supplemented with errors committed by the court in its general charge." None of the assignments covering the answers to points seem to be dwelt upon or even alluded to, except the sixth. In the latter the court was asked to say : " The defendant, being by law compelled to employ legal pharmacists and these being accredited and accepted by the commonwealth, he is not charged with either the knowledge or visited with the crime of his clerks," which was answered by the court as follows : " If the unlawful sales or unlawful furnishing was with the knowledge and consent of the defendant, refused; if without his knowledge and consent, affirmed." The argument of the defendant upon this branch of the case seems to be that, inasmuch as the commonwealth requires persons who practice pharmacy to pass an examination and secure a certificate of competency in order to qualify for so doing, under the provisions of the Act of the 24th of May, 1887, P. L. 189, and the defendant, in order to carry on the business of pharmacy, being compelled to employ persons certified as competent under the provisions of the said act, he cannot be held liable for violations of the law committed by such employees, even when the law has been violated, not only with his knowledge and consent but by his express directions. The court below properly answered this proposition. If the defendant had been on trial for carrying on the business of pharmacy contrary to the provisions of the act of 1887, supra and its supplements, the fact that he had employed skilled pharmacists whose qualifications were vouched for by the certificate of the Pharmaceutical Examining Board would have protected him from the penalties provided for in said act: Com. v. Johnson, 144 Pa. 377. The certificate of competency as a pharmacist, however, in no way relieves the person holding it

from the duty of obeying his employer within the scope of his employment, nor the employer from the penalty of violated law. The relations of a qualified pharmacist to his employer, so far as the sale of intoxicating drinks is concerned, are in no respect different from what they would have been, if the act of 1887, supra, had never been passed. The answer of the court, therefore, to the defendant's tenth point was entirely correct. The cases relating to mine bosses relied upon by the defendant have no application whatever to the present case.

The seventh, eighth, ninth and thirteenth assignments of error are not sustained. They all relate in some form to the amount of whisky taken into and sold from the drug store of the defendant. All the testimony relating to that subject, whilst not conclusive as to the guilt of the defendant, was not entirely irrelevant. The defendant was tried upon an indictment containing five counts : the first count, for selling liquor without a license to an individual named and others unknown ; the second and third counts, for selling or furnishing intoxicating liquors to persons therein named on Sunday; the fourth, for selling intoxicating liquors as a druggist without a regular prescription of a regularly registered physician authorizing him so to do ; and the fifth, for selling more than once on the same prescription. The possession of the whisky in the defendant's cellar was the first link which, if connected with other links, would constitute a chain of evidence which would justify his conviction. The possession of poison or of a deadly weapon, although not conclusive as to the guilt of a defendant charged with murder, is, nevertheless, relevant and competent as constituting the first link in a chain which may lead to a conviction. It is no answer to evidence that it does not prove the plaintiff's whole case. If it is a link in the chain of the evidence afterwards to be given, it is admissible : Johnston v. Warden, 3 Watts, 101 ; Haughey v. Strickler, 2 W. & S. 411. "It is not necessary that the relevancy of testimony should appear at the time, when it is offered, it being the usual course to receive at any proper and convenient stage of the trial, in the discretion of the judge, any evidence which the counsel shows will be rendered material by other evidence which he undertakes to produce. If it is not subsequently thus connected with the issue, it is to be laid out of the case : " 1 Greenleaf (11th ed.), sec. 51.

The tenth, eleventh and twelfth assignments of error must be sustained. Three druggists doing business in the same town with the defendant were called to testify as to the amount of liquor required in the business in which they were concerned respectively, the following formal offer being made in relation thereto : " It is proposed to prove by the witness on the stand and others in a similar position that in running a legitimate drug business one barrel of liquor does a year or about that— a larger business than was conducted by Dr. Johnston—and that Dr. Johnston during five months, as testified by the witnesses here, consumed a barrel a month in his business." Two of the witnesses testified that in their business they consumed each about one barrel in twelve months. The third witness, however, Mr. Balph, testified that he used about fifteen or twenty gallons per year. It is very plain that, if the testimony of these three witnesses was competent to affect the rights of the defendant, on the same principle Balph's testimony would have convicted the other two who sold twice as much as he did. No fixed standard as to what constitutes a legitimate business was shown or can be shown, and for this reason all the testimony upon this subject was both incompetent and irrelevant and should have been excluded. In the manufacture of proprietary medicines a druggist doing a legitimate business might use five times as much whisky as one who did an illegitimate business.

As to the testimony of Reiseman, complained of in the fourteenth assignment, it was stricken out by the court subsequently as erroneous, which it certainly was. The rights of the defendant would have been better guarded, if the testimony had not been admitted ; but, having been admitted, the court did the best in its power to remedy the fault. We cannot see that the defendant suffered materially, as the case was finally submitted to the jury.

The sixteenth assignment of error is not sustained. The defendant's knowledge of sales made on Sunday was a fact. The witness may have known the fact by the presence of the defendant at the time the sale was made, by his declarations as to knowledge, and in other ways. As to the manner in which he acquired the knowledge, the defendant had the right to cross-examine him. ' The testimony, so far as it went, was entirely proper.

The seventeenth assignment of error is not presented to us in accordance with our rules. The letter referred to is not printed nor do we have any intimation in the assignment itself where it can be found. It is, therefore, overruled.

In the portion of the charge embraced in the eighteenth assignment of error the trial judge invades the province of the jury. He states as a fact that there has been great violation of the law in this drug store by somebody. This was an important step in fixing the guilt upon the defendant. The most that could be judicially said upon that subject was that, if certain of the witnesses who had testified to sales made there were believed, the law had been violated; but the credence to be given to the testimony of all witnesses is for the jury.

The part of the charge complained of in the nineteenth assignment of error is open to the objection made thereto by the appellant. It has something of the appearance of a certificate of character of the witnesses for the commonwealth who, if their testimony was believed, were themselves undoubtedly guilty of a violation of law, and the manner in which their testimony is commented upon tends undoubtedly to minimize that of the defendant, but we are not prepared to say that the latitude allowed to the court in commenting upon the evidence of both sides has been transgressed in such a way as to constitute reversible error, if this assignment contained the only error complained of.

The part of the charge embraced in the 20th assignment covers the same question involved in the answer to the defendant's fifth point. The instruction was correct and the assignment is overruled.

The part of the general charge complained of in the 21st assignment is an effort to qualify the purposes for which the testimony complained of in the seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth and fifteenth assignments of error was admitted. The purpose for which this testimony was admitted is stated by the court to be twofold : first, for the purpose of settling the question of veracity between the witnesses and the defendant, and secondly, "for the purpose of determining as near as you can the Doctor's intention." It is to be observed that this testimony was all received during the presentation of the commonwealth's case in chief. It could not.

therefore, have been introduced for the purpose of testing the veracity of the defendant. The court, however, says : " If Dr. Johnston had not gone on the stand, we would have ruled out all this testimony, because it does not affect this case only so far as it may lead you to get a correct conclusion as to who is telling the truth." The testimony should not have been admitted in anticipation of the defendant's taking the stand. He had a right to do so or to refrain from doing so. If he took the stand and did not deny the testimony of the witnesses, no light would be thrown upon the question of his veracity and the prejudice of the jury against the defendant greatly aroused. As a matter of fact, the defendant did not deny the amount of liquor which went into his store nor did he seriously controvert the testimony of the witnesses as to the amount that was sold. There was, therefore, no question of veracity between them and the testimony admitted threw no light upon the subject. Nor was the testimony admitted any evidence of a wrongful intention on the part of the defendant. The fact that he purchased any number of barrels of whisky was no evidence that he intended to sell them in any given time. The court distinctly says that " The fact that it was there was of no account at all so far as unlawful sales are made, if not by him or his clerks, by his authority, but you can use it for the purpose of determining as near as you can the doctor's intention." How could the mere presence of a number of barrels of whisky in his cellar be an evidence of the intention on the part of the defendant to sell it more rapidly than did his neighbors who confined their sales to a barrel a year? In regard to the testimony of the neighboring druggists, the court says : " We also allowed Dr. Redick and Mr. Boyd and Mr. Balph to testify as to their sales. You recollect what they said, and we think you have a right to consider this in coming to the determination whether or not the Doctor, as a business man, a careful man, an honest man, would not know from the large amount of sales whether or not his clerks were acting lawfully and only for that purpose." There is no evidence whatever that the defendant had knowledge of the amount sold by these druggists or that there was any recognized, fixed standard of the amount that a drug store, doing a legitimate business, should sell. How then could the amount sold by them determine in his mind what should be sold by his clerks ? The only

view of this case in which any of this testimony was legal evidence is the one pointed out in our remarks upon the seventh, eighth, ninth and thirteenth assignments of error.

The twenty-second assignment has been sufficiently passed upon by what we have already said in regard to the specific parts of the charge complained of. For the reasons stated, we are forced to the conclusion that the case must be retried.

The judgment is reversed and a new venire awarded.