From E. E. Crumrine, Washington, Pa.

---

## Commonwealth v. Ilich.

*Criminal law—Liquor law—Remarks to whole panel of jurors.*

Where the court called before it the whole panel of jurors and stated that there had been brought to its attention declarations of certain jurors that they would not convict in liquor cases on the testimony of policemen, and that there had been some miscarriage of justice and some acquittals not justified by the evidence, a defendant convicted by a jury subsequently drawn from such panel cannot complain that he was injured by the remarks of the court addressed to the general panel.

Motion for new trial. Q. S. Dauphin Co., Jan. Sess., 1924, No. 130.

*Robert T. Fox,* District Attorney, for Commonwealth.

*Metzger & Wickersham,* for defendant.

HARGEST, P. J.—The defendant having been convicted for the unlawful possession and sale of intoxicating liquor, moved for a new trial and complains that he did not have a trial by an impartial jury because of remarks made by the court to the whole panel of jurors before his case was called.

At the sessions of this court, which began Jan. 14th, a number of cases were listed for the violation of the liquor laws. From the beginning of the sessions there were acquittals in cases charging violations of the prohibition law and for operating motor-vehicles while under the influence of liquor, where the evidence justified convictions. Three courts were being held. The judges from time to time conferred concerning the situation. Throughout the first eight days of the court there were nineteen acquittals, in some of which there were flagrant miscarriages of justice. During this time some jurors had reported to us the attitude and declarations of other jurors, to the effect that they would not convict even on proper evidence. The three judges of the court, after serious consideration, concluded that the administration of justice required that no more cases should be called before that panel of jurors. It was due the jurors to so advise them, which we did, in the following language:

"What we are about to say we regard as of sufficient importance in the administration of law in this county to have all of the jurors at this court hear it, and, therefore, we have asked them to come in.

"It has been brought to the attention of the court that there are certain members of the jury serving in this court who have declared that they would not convict any person for violating the liquor laws on the evidence of State policemen, and that some have said that they would not convict on the evidence of a city policeman in motor-vehicle cases unless there was actual damage.

"We had hoped that these rumors were unfounded, because such an attitude shows a disregard for the oath which a juror has taken and makes the enforcement of law a mockery. But we are now convinced that there is some ulterior motive which has induced acquittals in this class of cases where the evidence has abundantly justified convictions.

"We do not say, or intend to say, that there should not have been acquittals in some cases, but this court is unanimous in concluding that there have been miscarriages of justice and some acquittals where the evidence did justify convictions. Judges are powerless to administer the law if juries will not convict on proper evidence. The court wants it understood where the responsibility lies.

"In view of the situation and in order to prevent further miscarriage of justice, we now direct the district attorney to call no more cases for the violation of liquor laws at this term of court before this panel of jurors."

After this statement was made, the district attorney announced that he was required to call one case because a witness on whom he relied was detained in jail and would have to be discharged after the term. We thereupon permitted this case to be called. It resulted in a conviction.

The defendant does not complain of anything which happened at the trial. No error is assigned either to the admission of testimony or to the charge of the court. But he complains that, by reason of the remarks of the court, he did not have an impartial jury and that the jury was prejudiced against him. We think these reasons are not sound.

It is a well recognized principle that the court cannot use language or give directions which, under the circumstances of the case, may have the effect of coercing the jury to agree upon a verdict: 16 C. J. Crim. Law, 1091; Com. v. Werntz, 161 Pa. 591.

So it has often been held that it is error for the court to improperly refer to the testimony of one side or the other, or to assume as a fact what is testified to by the witnesses and has a material bearing on the question of guilt, or to reflect adversely on the finding of a jury in a particular case, which finding is involved in the issue on trial: Com. v. Kay, 14 Pa. Superior Ct. 376; Com. v. Johnston, 5 Pa. Superior Ct. 585, 598; State v. Ladd, 10 La. Ann. 271; People v. Mayer, 117 N. Y. Supp. 520; People v. Sheldon, 156 N. Y. 268, 41 L. R. A. 644.

The defendant relies especially on the case of Com. v. Kay, 14 Pa. Superior Ct. 376. In that case the defendant was indicted for embracery. The court charged the jury that the verdict in the case in which the alleged embracery was practiced was a "shock to the judicial mind." The Superior Court said, page 390: "This significant and emphatic utterance, followed by a narration of the proceedings leading up to the indictment . . . had a natural tendency to fix in the minds of the jurors the impression that the verdict was grossly wrong. With this impression implanted in their minds at the outset of their consideration of the evidence, they would readily credit the Commonwealth's allegation that one or more of the jurors had been corruptly approached."

In Com. v. Johnston, 5 Pa. Superior Ct. 585, 598, where the defendant was charged with unlawful sales of liquor, the trial judge stated as a fact that

Commonwealth v. Ilich.

there "had been great violation of the law in this drug store by somebody." This was assuming a fact which the jury themselves had to find in order to fix guilt upon the defendant.

It needs no discussion to point out the difference between these cases and the situation before us. In the remarks now complained of, there was no comment upon the evidence in the case on trial, or upon the case itself, or to the jurors after they had been empaneled in this case. There was only a general criticism for acquittals in cases that had been tried where the evidence justified convictions, and a statement to the jury that some of the jurors in the panel had declared they would not convict on proper evidence. It could have had no other effect upon the jurors in the trial of this case than to admonish them to consider the evidence and not be swayed by prejudices. The case of Sickler v. Town of Lavalle (Wis.), 27 N. W. Rep. 163, is in point, but even in that case the remarks of the judge were made to the panel called for the trial of the case before the jury was sworn. The court said of the circuit judge: "He had learned that in a case of a similar character to this, tried at that term, some of the jurors had taken the ground that, no matter what the testimony or the merits of the case might be, they would not find a verdict against the town for damages occasioned by a defective highway. The circuit judge then proceeded to remind the jurors of their duty and the obligation which their oath imposed to try and decide such cases according to the law and testimony adduced, regardless of their individual opinions as to the justice or wisdom of the statute which made towns liable for injuries resulting from defective highways. The judge told them that, as jurors, they had nothing to do with the wisdom of the statute; that it was their duty to administer it faithfully while it was in force. This is the substance of the observations made by the circuit judge, and it seems to us they were eminently proper, if he had reason to believe, as he doubtless had, that any of the jurors had taken the position suggested; for a jury trial would be worse than a farce if jurors were so destitute of moral principle, and so regardless of the sanctity of their oath, as to find in favor of a town in cases of this character, however clear and conclusive might be the testimony establishing its liability. And if the circuit judge had grounds to suppose that any person on the jury needed instruction as to his duty to listen impartially to the evidence and find according to the facts proven by it he was quite right in saying what he did."

In Reed v. State (Tex.), 168 S. W. Repr. 541, the judge generally charged the whole panel at the beginning of the court. It was held that "remarks or an address by the trial judge to the regular jury panel for the week, when administering the oath to them and for the purpose of aiding them in the discharge of their duties, could not be construed as a charge in a criminal case tried during the week for which they were impaneled," and it was held in this case that remarks by the trial judge to the regular jury panel, telling them, in effect, that they must forget the standing of the parties, their names and who they are, but must try the case according to the evidence and the law, could not be construed to mean that the jury was not to consider the evidence of the defendant's reputation in a case subsequently tried.

We are of opinion, therefore, that the defendant was not judicially prejudiced, but that he did have an impartial trial. The evidence, if believed, justified his conviction, and the jury believed it.

The motion for a new trial is, therefore, overruled and the district attorney is directed to move for judgment.

From Sidney E. Friedman, Harrisburg, Pa.