## Robert Lister Smith *versus* Commonwealth.

1. The Commonwealth has the right upon the trial of misdemeanors and felonies not capital, as well as in the case of capital felonies, to stand aside jurors without assigning cause until the entire panel has been called.

2. A., while a passenger in a railway car filled with people, in a spirit of frolic, discharged a pistol, intended to shoot the load into the floor of the car, and thereby cause a temporary fright among the passengers. Without any intent on A.'s part, the ball from the pistol entered the foot of the prosecutor, inflicting a severe wound. At the time of the discharge the pistol was held downward, A. standing in the aisle, and the prosecutor and other persons standing behind him and in close proximity to him. On the trial of A. for the above offence, upon an indictment alleging an assault: *Held*, that under the circumstances, defendant's act being recklessly and willfully done, the law would of itself imply malice.

3. A certain offer of evidence tending to show that the defendant in the above case had intended some time previously to commit in sport merely the act for which he was indicted, was held incompetent and irrelevant.

[Smith v. Commonwealth.]

April 6th and 7th and May 6th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Oyer and Terminer and Quarter Sessions of *Philadelphia county:* Of January term 1882, No. 351.

Indictment of Robert Smith Lister alias Robert Lister Smith. The indictment contained three counts (1) assault and battery, (2) aggravated assault and battery, (3) assault and battery with intent to kill. Plea, not guilty.

On the trial, before BRIGGS, J., the third count of the indictment was abandoned and a verdict of not guilty was taken thereon.

The facts of the case, as found by a special verdict of the jury were as follows:

"That the defendant, on the 27th day of September 1881, in the county of Philadelphia, was a passenger in a car, which was filled almost exclusively with delegates and others who had been attending the State Convention that had been held at Williamsport; that the defendant immediately before the train was stopped at the depot in the city of Philadelphia, discharged a pistol, loaded with ball cartridge, downward and backward and by his side, intending to shoot the said cartridge into the car, and that the ball therefrom entered the foot of Samuel Josephs, inflicting a severe wound; that defendant had previously, while on the train, and in the said car, discharged the said pistol in like manner, for the purpose of causing a temporary fright amongst its inmates, and then dissipating the same by explaining that the discharge did not come from a seeming pistol, which he had been, at the time of the discharge of the real pistol, flourishing and pointing recklessly—the seeming pistol being, in reality, a case containing cigarettes; that at the time of the discharge, when the ball struck the prosecutor, the pistol, then discharged, was by the defendant held downward, and was discharged with the intent to shoot into the floor, and not with the intent to injure the prosecutor or any other person; when the said discharge took place the defendant stood in the aisle of the Pullman parlor car, and the prosecutor and other persons stood behind him, and in close proximity to him.

"That the pistol was fired in a spirit of frolic and not with the expectation or intent, on the part of defendant, to injure any person whatever."

During the selection of the jury, one Michael McAleer, being called as a juror, was ordered to stand aside by the district attorney. The counsel for defendant objected, and challenged the right of the district attorney to stand the juror aside. Objection and challenge overruled. Exception. (First assignment of error.)

[Smith *v.* Commonwealth.]

The defendant offered to prove by a witness, George W. Harvey, "that on the 26th of September, immediately before the delegates went up to the Williamsport convention, the defendant went with the witness and purchased the small pistol to take it up on the excursion to Williamsport to be used to be fired off whenever the miniature pistol was flourished, to convey the impression that the discharge came from the miniature pistol; that defendant purchased said pistol and carried it for such purpose, to make a frolic by so using both pistols; that the pistol thus spoken is the pistol produced by Samuel Josephs on this trial, is the weapon that was discharged and caused the wound on the prosecutor's foot."

Objected to; objection sustained; exception. (Third assignment of error.)

The defendant presented, inter alia, the following points:

1. If the jury believe from the evidence that the defendant had no design or intent to strike or wound the prosecutor, at the time the pistol was discharged, the defendant should be acquitted. Answer. Declined as to the first and second counts, and third count withdrawn.

2. That in order to convict the defendant upon either of the counts of the indictment, the Commonwealth must satisfy the jury, beyond a reasonable doubt, that the defendant designedly and with intent to injure or wound the prosecutor discharged the pistol and inflicted the wound which constitutes the battery. Answer. Declined as to the first and second counts. Third count withdrawn. If he designedly discharged the pistol, even without intent to injure, the act being unlawful, the defendant is answerable for the immediate effects resulting from such unlawful act.

The Court charged, inter alia:

"I instruct you as a matter of law, that the firing of this pistol in a car inhabited at the time by passengers is a flagrant violation of the law, admitting of no justification, not to be encouraged or approved or excused in any aspect that has or can be presented.

"I instruct you, moreover, as a matter of law, that the act itself implies malice. I use the words 'implies malice,' because malice is either expressed or implied. Express malice is where the evidence justifies the jury in believing that the party, with a guilty, deliberate, and studied purpose, intended to injure his victim.

"Implied malice is where there is no specific intent, but where under the circumstances of the infliction of the injury the surroundings were such as to indicate a disregard of social duties to his fellows, a disposition that was so reckless as to de-

clare in action, 'I will have my sport and take the risk of injury whether it injures or not,' and when the surroundings are such as to raise the probability of danger in thus acting, the law legally and rightfully implies malice, not of that specific, deliberate, and studied character that characterizes express malice, but malice is implied in view of the action as it stands in relation to the surroundings. Understand me. I say the firing of a pistol loaded with a ball cartridge, in a car inhabited with passengers at the time of its discharge, is a flagrant violation of the law, is stamped with illegality, and has nothing whatever to justify it. I repeat, that the fact that the pistol loaded with ball cartridge was discharged in a car whereby one of the passengers might be struck, carries with it, in legal contemplation, implied malice, and if you so find, then the very wording of the Act of Assembly has been proven, namely, an unlawful act under circumstances of implied malice. . . .

"Therefore, if you believe, from the evidence, the fact to be that the pistol was fired—which is for your ascertainment—as the Commonwealth contends, and which the defendant does not deny, I say to you that it is unlawful. If you believe that these people were about passing out of the car and crowded into the aisle when that pistol was discharged, it carries with it implied malice in the law. Do not let us deal in any delicate or sentimental way. The man that does so takes the risk; he knows there is great danger, not to him, but to any one whose person or limb may be in the direction of the pointed weapon, and therefore he stands in no particular favor or relation to a court of justice, when he must have known, in the very nature of things, that great injury would necessarily be done to some of his fellow-passengers the moment he pulled the trigger if the ball happened to hit a passenger. If such were not the law, every criminally disposed man in the Commonwealth would receive a premium for taking his place in crowded places and indulge in criminal sport. . . . Let it be known that the man who uses a deadly weapon in such places, whilst he challenges the law, takes all the consequences, however dire they may be, immediately resulting from his actions."

Verdict, upon the first and second counts, guilty. A motion in arrest of judgment was refused, and judgment was entered for the Commonwealth on the special verdict. The defendant was sentenced to pay a fine of $100 and costs, and to be imprisoned at labor by solitary confinement in the county jail for one year.

The defendant thereupon took this writ of error, assigning for error: 1. The overruling of defendant's objection to the standing aside of the juror, McAleer.

3. The rejection of the defendant's offer of testimony, above stated.

4. The answers to the defendant's points.

5. The portion of the charge above quoted.

6. The entering of judgment on the special verdict, and the sentence to solitary imprisonment.

*William B. Mann* (*T. Warren O'Neil* with him), for the plaintiff in error.—The practice of " standing aside" jurors was tolerated in Philadelphia county, in cases tried in the oyer and terminer, in order to give the Commonwealth some show of equality with a defendant who had twenty peremptory challenges, while the Commonwealth prior to 1860 had none, and now has only four. But in cases in the quarter sessions, where the Commonwealth and the prisoner are equal in this respect, the reason does not apply. In this case the third count of the indictment, charging assault with intent to kill, was abandoned, and the case was tried in the quarter sessions.

[MERCUR, J.—The indictment is headed, " In the court of oyer and terminer and general jail delivery and quarter sessions of the peace for the city and county of Philadelphia," as though it was but one court under that. style. Why is that, and what is there to show that this case was tried in the quarter sessions, and not in the oyer and terminer?]

That printed heading is of long standing in this county. Both courts are open at the same time, and as cases in both are tried by the same judges and by the same panel of jurors, the# practice is to pass immediately from a trial in one court to a trial in the other. Cases which are exclusively triable in the oyer and terminer are understood to be tried in that court.

[SHARSWOOD, C. J.—The distinction is a material one, and should not be confused. We have reversed cases tried in the quarter sessions which ought to have been tried in the oyer and terminer.]

Under the facts as found by the special verdict the defendant could not be convicted of an assault, because to constitute an assault there must be an attempt with intent to do violence to another. The intent to injure is the gist of an assault: ·Hays *v.* People, 1 Hill (N.Y.) 352 ; Hob. 134 ;. United States *v.* Hand, 2 Wash. 435 ; Richels *v.* State, 1 Sneed (Tenn.) 606 ; Johnson *v.* State, 43 Texas 576.

*George S. Graham*, district attorney, for the Commonwealth, referred to his printed argument on the question of standing aside jurors, in Haines *v.* Commonwealth (see ante, p. 320).

Mr. Justice STERRETT delivered the opinion of the court, October 2d 1882.

The question presented in the first specification, as to the right of the Commonwealth to stand aside jurors, has just been considered and disposed of in Haines et al. v. Commonwealth. It is there held that, in the trial of misdemeanors as well as felonies, the district attorney has a right, under the supervision of the court, to order jurors to stand aside until the entire panel has been called; that this practice had its origin in the construction given to the statute 33 Edward I., which is recognized as being in force in this state; that having thus become established in England, the practice descended to us from that country, whence most of our laws and customs were derived, and has never been altered by legislative enactment or otherwise. The fact that the right, which is conceded to the Commonwealth in capital felonies, has been very seldom asserted in misdemeanors and felonies not capital, is no argument against its existence in the latter classes of cases as well as the former. It has undoubtedly been claimed and recognized by courts of original criminal jurisdiction in some cases, but how frequently we have no means of determining. In the quarter sessions of Philadelphia county it was claimed and sustained in at least two well considered cases: Commonwealth v. Mara, 3 Brewster 402, and Commonwealth v. Keenan, 30 Leg. Int. 416.

The testimony referred to in the second and third specifications was clearly irrelevant, and was therefore properly excluded.

The fourth and fifth assignments are not according to rule; but, waiving any objection on that score, we think, in view of the testimony before the jury, there was no error in refusing the points referred to in the former, nor in charging, on the subject of implied malice, as complained of in the latter.

The facts established by the special verdict clearly justified the judgment that was pronounced thereon. This is so conclusively shown in the opinion of the learned judge before whom the case was tried, that nothing more need be said on that subject. The act of discharging the pistol, under the circumstances found by the jury, was undoubtedly unlawful and well calculated to inflict serious personal injury. It was recklessly and willfully done, without the slightest justification or excuse. From such facts as these the law will imply malice.

In a case somewhat analogous in principle to the one before us, it was said in reference to the prisoner: " He acted unlawfully and maliciously; not that he had any personal malice against the individuals injured, but in the sense of doing an unlawful act calculated to injure, and by which others were, in fact, injured. Just as in the case of a man who fires a gun

among a crowd, it is murder if one of the crowd be thereby killed : " Queen *v.* Martin, 8 Law Rep. Q. B. Div. 54.

Judgment affirmed, and it is ordered that the record be remitted to the court of Quarter Sessions of Philadelphia county, for the purpose of carrying the sentence of that court into execution.