## COMMONWEALTH v. JAMES O'BRIEN ET AL.

140    555
40SC²527

APPEAL BY DEFENDANTS FROM THE COURT OF QUARTER SESSIONS OF SCHUYLKILL COUNTY.

Argued February 17, 1891—Decided March 9, 1891.

1. In empaneling a jury in a criminal case, whether a felony or misdemeanor, the commonwealth may stand aside jurors even after the peremptory challenges of the defendant have been exhausted, and without recalling jurors previously stood aside.   The right is unchanged by § 37, act of March 31, 1860, P. L. 440.

2. On the trial of an indictment for a criminal conspiracy, after evidence has been given by the commonwealth tending to establish collusion between the defendants, it is not error to admit in evidence a relevant act of one defendant, with which, in itself, the other defendant had not been connected.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 117 July Term 1890, Sup. Ct.; court below, No. 722 November Term 1889, Q. S.

On September 6, 1889, the grand jury returned as a true bill an indictment charging James O'Brien, Martin Foley and Patrick Gallagher with conspiracy to cheat and defraud the Prudential Insurance Company of America, a New Jersey corporation, out of the sum of one thousand dollars, the amount of a certain policy of insurance on the life of Charles O'Brien. Issue.

Statement of Facts.

The cause was called for trial on November 23, 1889, when twelve jurors were called and the list was handed to the commonwealth for challenge. The commonwealth did not challenge, but stood aside one of the jurors in the box, and passed the list to the defendants, who struck off one, when another juror was called in his place. The list was then returned to the commonwealth's counsel, who, without challenging, stood aside a second juror, and passed the list to the defendants, who struck off another. When this course had been repeated until the commonwealth had stood aside four jurors from the box, and the defendants had challenged four peremptorily,[*] James McGovern was called in the place of the last juror challenged by the defendants:

Mr. Schalck: Stand the juror aside.

Mr. J. W. Ryon: No, we object; we have got a jury. This is a motion on the part of the commonwealth to stand aside a juror called in answer to a peremptory challenge. The defendants object to the standing aside of the juror on motion and application of the commonwealth, the fact being, as will be exhibited by the record, that as the jurors were called the commonwealth stood aside four that answered to their names as they were called. The process of selecting a jury was continued until there were twelve jurors placed in the box. The commonwealth was then called upon to exercise its right of challenging, in answer to which it waived its first challenge, its second challenge, its third challenge and its fourth challenge. The defendants exercised their right of challenging, and this juror, McGovern, was called in answer to the defendants' fourth challenge. It is objected, that the right to stand aside must be exercised as the jurors are called, and before any peremptory challenges are made. If the commonwealth allow the twelve jurors to be seated in the box, the only lawful challenge which can be made afterwards, is the four peremptory chal-

---

[*] It was not clear from the paper-books, whether the twelve jurors were called into the box before any were stood aside by the commonwealth, as stated in the appellants' paper-book, or whether, as seems to be shown in the objection to the standing aside of McGovern, the commonwealth had stood aside four jurors as they were called, before the box was full and before the defendants had made any challenges. It would perhaps be immaterial.

lenges given by law and such further challenges for cause as they.may have the right to exercise. The right to stand aside jurors is a right which can be lawfully exercised only while the jurors are being called, and before the commonwealth allows twelve of them to take their seats in the box.

Mr. Schalck: The commonwealth claims the right to stand aside jurors at any time until the panel is exhausted, and that there is no law that limits the right of the commonwealth in the premises, or confines it to standing aside jurors before twelve men are called or before the defendant has made challenges.

By the court: Objection overruled; exception.[2]

McGovern having been stood aside, William Hay was then called by the clerk. The commonwealth directed him to stand aside. Objected to.

By the court: Objection overruled; exception.

Another juror being called and accepted, the jury was made complete.

The jury having been sworn, evidence was adduced on the part of the commonwealth tending to show the following facts:

Sometime prior to June 21, 1887, an application for insurance on the life of Charles O'Brien was taken by Martin Foley, a local agent of the Prudential company. The answers to the questions on the printed form were inserted by Foley, on the examination of Charles O'Brien in the presence of James O'Brien, a son of Charles O'Brien. At this time, Charles O'Brien was about seventy years of age, and was of infirm health, afflicted with "miner's asthma;" but his age was put down at fifty-seven, his condition of health good, the agent certifying that he had personally seen and questioned the applicant and recommending the company to accept the risk. Foley afterwards left the application with the company's medical examiner, at Mahanoy city, saying that Charles O'Brien would call to be examined. Some one did call, at the time appointed, and personated Charles O'Brien, with whom the examiner was unacquainted. It was claimed that the person personating Charles O'Brien was Patrick Gallagher, but the medical examiner was unable to identify him with certainty. The latter made his report to the company, and on June 27, 1887, a policy was issued on the life of James O'Brien for

$1,000, for the benefit of James O'Brien, and transmitted to the latter, who paid the weekly dues thereon until the death of the assured, on April 12, 1889, from acute bronchitis.

After evidence tending to show collusion between the defendants O'Brien and Foley, the commonwealth proved and offered in evidence an application in printing and writing by Charles O'Brien to the directors of the poor of the county for out-door relief. This application was dated February 7, 1885, and was sworn to before James O'Brien as a justice of the peace, with the written answers to the printed questions in his handwriting. In it, the applicant was stated to be sixty-eight years of age, unable to work, without property or money, and destitute because of "old age, and sick with miner's asthma." Objected to, by the defendants.

By the court: Objection overruled, offer admitted; exception.[7]

At the close of the testimony, the court, PERSHING, P. J., charged the jury in part as follows:

[As bearing upon the alleged substitution of one party for another in the application, the issuing of this policy by the company, and the alleged fraud, in consequence of this substitution, of some person instead or in place of Charles O'Brien, you have heard a large number of witnesses, giving in detail the apparent age so far as they knew it, of Charles O'Brien, his height, his weight, and his condition of health, prior to and about the time of this application for an insurance policy upon him. It is claimed on the part of the commonwealth that he was much older than represented in the application. The answer to the question of age in the application was fifty-seven years. It is claimed that Charles O'Brien could not have been the man that made that answer; that it must have been somebody else, for the reason that the commonwealth alleges that he was much older than fifty-seven years at the time this application was made in 1887. As a part of the evidence on that point, there is produced here a sworn application made by Charles O'Brien in 1885, for relief from the county, in which it is set forth that he was then sixty-eight years of age. That was in 1885. This application for insurance was dated in 1887. If it is the fact that he was sixty-eight in 1885, it would neces-

Arguments.

sarily follow that he was seventy in 1887; and, as he did not die till April, 1889, he would be two years older at that time, which would make him seventy-two. This application for county benefits was received as a declaration on the part of Charles O'Brien as to his age in 1885. We are asked to say to you in a point, and we do so say to you that neither Gallagher nor Foley were parties to that application. There is not a single particle of evidence to connect them with that application. There is no evidence here that they knew anything at all about it. There is no evidence here that, at the time the application was taken by Foley, he knew that Charles O'Brien was as old as he represented himself to be in this application to the county. But it may be the duty of the agent to ascertain the age of the applicant, and if Charles O'Brien was really at the time of his application seventy years of age, and Mr. Foley had known him before, as I believe he testifies he had, it would be a proper inference that he should have taken notice of that fact, or that he was careless or negligent about the matter. That would not amount to conspiracy. But, if this were actually Charles O'Brien, and he knew Charles O'Brien, and could judge from his appearance about his age, it would be a circumstance in the case to be taken into consideration by the jury. The paper itself was not admitted as any evidence against the other two defendants, but it was admitted simply to show how old Charles O'Brien claimed he was at the date of that application.] [8]

—The jury returned a verdict of not guilty as to Patrick Gallagher, and as to James O'Brien and Martin Foley, guilty, with a recommendation to the mercy of the court. A rule for a new trial having been discharged and sentence imposed, the defendants O'Brien and Foley took this appeal, assigning inter alia for error:

2. The permission to stand aside juror McGovern.[2]
7. The admission of the commonwealth's offer.[7]
8. The portion of the charge embraced in [  ] [8]

*Mr. James Ryon* (with him *Mr. John W. Ryon*), for the appellants.

Against the right of the commonwealth to stand aside jurors as done in this case, counsel cited §§ 37, 38, act of March 31,

1860,. P. L. 439; statute 33 Edw. I, Roberts' Dig. 338; Commonwealth v. Jolliffe, 7 W. 585; Jewell v. Commonwealth, 22 Pa. 94; McFadden v. Commonwealth, 23 Pa. 12; Warren v. Commonwealth, 37 Pa. 45; Hartzell v. Commonwealth, 40 Pa. 462; Haines v. Commonwealth, 100 Pa. 318; Smith v. Commonwealth, 100 Pa. 324; Commonwealth v. Twitchell, 1 Brewst. 557; Commonwealth v. Reid, (Q. S., Paxson, J.,) 1 Leg. Gaz. R. 182; Commonwealth v. Frazier, 2 Brewst. 490; Zell v. Commonwealth, 94 Pa. 272. On the law of conspiracy, generally, as applicable to the case: Hartmann v. Commonwealth, 5 Pa. 60; Hazen v. Commonwealth, 23 Pa. 355; 3 Greenl. Ev., §§ 95, 96; Commonwealth v. Hunt, 4 Metc. 125; Commonwealth v. Eastman, 1 Cush. 189; Commonwealth v. Galbraith, 6 Phila. 281.

*Mr. A. W. Schalck* (with him *Mr. Richard H. Koch,* District Attorney, *Mr. W. J. Whitehouse, Mr. James F. Grady, Mr. M. M. L' Velle* and *Mr. Chas. N. Brumm*), for the Commonwealth.

Other than authorities cited by the defendants, as to the right to stand aside jurors, counsel cited: 1 Bishop's Cr. Proc., § 938; 2 Whart. Cr. Law, § 29, 56; Rudy v. Commonwealth, 128 Pa. 500; Commonwealth v. Marrow, 3 Brewst. 402; Commonwealth v. Keenan, 10 Phila. 194; Commonwealth v. Ware, 137 Pa. 465.

PER CURIAM:

The right of the commonwealth to stand aside a juror, is no longer an open question. Nor is the right confined to trials for felonies, but may be exercised in cases of misdemeanors. And it applies as well to jurors brought into court on a special venire, as to those on the regular panel: Haines v. Commonwealth, 100 Pa. 317; Smith v. Commonwealth, 100 Pa. 324; Rudy v. Commonwealth, 128 Pa. 500. Nor was the rule changed by the thirty-seventh section of the criminal procedure act of 1860, which allows peremptory challenges to the commonwealth: Warren v. Commonwealth, 37 Pa. 45. We need not pursue the subject further; it is thoroughly exhausted.

We are unable to find error in the admission of the application of Charles O'Brien to the directors of the poor. James O'Brien was directly connected with this transaction, and, as

Statement of Facts.

an overt act of one of two joint conspirators, it was evidence against both.

Several of the assignments relate to the exclusion of evidence. As they do not conform to the rules of court they have not been considered. Those that allege error in the charge of the court are not sustained. The charge was correct upon the law and impartial upon the facts.

> The judgment is affirmed, and it is ordered that the defendants surrender themselves forthwith to the custody of the high sheriff of Schuylkill county, for confinement in pursuance of the sentence of the court below.