## Commonwealth v. Kay.

*Criminal law—Pleading—Indictment—Rejection of surplusage.*

Where a count in an indictment does not charge a statutory offense yet, but for words " contrary to the form of the act of general assembly in such case made and provided," was a well drawn count for a common-law offense, those words properly may be rejected as surplusage.

*Criminal law—Right to stand aside jurors.*

The right to stand aside jurors exists at the present time in misdemeanors as well as in felonies ; and this right includes the right to reserve the acceptance or the challenge (either peremptory or for cause) of the juror until the whole panel is gone through.

The right exists independently of the mode in which jurors in the particular kind of case to be tried are impaneled and the mode need not necessarily be changed in order that the right may be exercised.

*Evidence—Cross-examination—Appeal.*

It is not sufficient to show that an improper question, either in form or substance, has been put to a witness. It must appear that an answer was received which tended to injure the case of the appellant.

*Evidence—Previous confirmatory statement—When not admissible.*

The subject of the admissibility in evidence of the previous statement of a witness consonant with his testimony is not free from difficulty. Such evidence cannot, as a general rule, be given in chief. It cannot broadly be said to be admissible whenever a witness had been contradicted. Nor is it admissible when it is not alleged that the witness made inconsistent or contradictory statements and where no attempt was made to impeach his general character for truth, and no evidence, direct or circumstantial, was given tending to show that his statements were fabrications of recent date, or that, by reason of his relation to any of the parties or the cause, which relation did not exist when his prior statements were made, he was unconsciously influenced.

To admit evidence that a witness expressed a belief that the accused had attempted to influence a juror, without stating the grounds of belief as confirmatory of his testimony as to the conversation between the accused and the juror, is going farther than is warranted by either principle or authority.

*Charge of court—Reference to an unprovable fact.*

The charge being embracery it was error for the judge in referring to the trial in question to say that the verdict of the jury was " a shock to the judicial mind." This emphatic utterance followed by a narration of the proceedings leading up to the indictment had a natural tendency to fix in the minds of the jurors the impression that the verdict was grossly wrong. It was an impression which the defendants could not remove or even combat by evidence. It would be entirely subversive of trial by jury if it were held allowable for the court to introduce into a criminal case so important a fact as this,—a fact which it would not have been permissible for the commonwealth to prove or the defendants to disprove.

Argued April 16, 1900. Appeal, No. 155, April T., 1900, by defendants, in suit of Commonwealth of Pennsylvania against J. C. Kay and J. B. R. Streator, from judgment of Q. S. Washington Co., Aug. Sess. 1899, No. 150, on verdict of guilty. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by RICE, P. J.

Indictment on two counts for embracery and conspiracy. Before TAYLOR, J.

It appears from the record that upon petition of the district attorney founded on belief that defendants, together with one Fred Emery, had attempted to corrupt a juror empaneled to try a certain case of the Commonwealth v. Samuel Hazlett, the court ordered an investigation by the grand jury, which body made a presentment upon the return, whereof the court directed the district attorney to send up an indictment against the alleged offenders, which was done, and the same returned to the court as a true bill.

The indictment contains two counts, both of which concluded with the averment that the offense charged therein was " contrary to the form of the act of the general assembly in such case made and provided and against the peace and dignity of the commonwealth of Pennsylvania." The first count charges the appellants, together with Emery, with an attempt to influence one Frank Watson, a juror empaneled in the aforesaid case; and the second count charges the same defendants with conspiracy to influence said juror.

Upon motion to quash the first count on the ground of insufficient certainty of allegations, and the second count on the ground that it failed to conform with any statute relating to conspiracy, the court entertained and allowed a motion of the district attorney to amend the second count by striking therefrom the words " contrary to the form of the act of the general assembly " as surplusage, upon notice that the proceeding on said count was at common law, and thereupon the motion to quash the indictment as amended was overruled, and, a severance having been asked by the commonwealth and granted by the court as to Emery, the appellants pleaded " not guilty," upon which plea issue was joined, and the cause proceeded to trial.

At the trial, Chester Brownlee, a witness called by the commonwealth in rebuttal, being on the stand, the commonwealth was permitted to introduce evidence in support of the following offer:

[I offer to show by the witness that Ralston, immediately after he got up from the position where Kay and Watson were, stated to this witness his opinion of the condition of the juror, and that he was going to inform Mr. Sprowls of what he had heard; to be followed by evidence of what he told Mr. Sprowls

that same evening, as corroborative of the commonwealth's witness, Ralston, and as contradicting the statement of the defense.

We offer to show by the witness that he saw Major Kay and the juror Watson and the witness Ralston together in the office on the Friday evening that.has been mentioned ; that immediately upon their separation Mr. Ralston, the witness, came to him and expressed his opinion of the juror, indicating a conclusion resulting from that conversation that he had overheard there, and stated that he intended to inform one of the commonwealth's counsel, Mr. Sprowls, of that fact ; to be followed by evidence that upon the same evening he, Ralston, recounted to Mr. Sprowls what conversation he had overheard ; to be followed by the statement then made by the witness to Mr. Sprowls what conversation he had overheard, for the purpose of corroborating the statement of the commonwealth's witness which has been denied by the defendants and their witnesses.  That the time when the witness repeated the conversation which he claimed to have overheard was within a few hours of the time of its occurrence, and before any inquiry, legal or otherwise, had been raised or any litigation suggested.

Objected to on the part of the defense, first, because, if competent at all, it is a part of the commonwealth's case in chief : second, because it is wholly incompetent, as being altogether a matter of hearsay, and for the purpose of repeating the talk or testimony of the commonwealth's witness.

The Court : So far as the objection goes to its being their case in chief, it is always in the discretion of the court as to when testimony shall be introduced, in what order, and the objection is overruled as to that.   We will overrule the other objection, asking counsel to shorten it by asking the witness if he has told substantially, immediately afterwards, what he has told upon the stand, and that was communicated to his counsel. On request of defendants, exception allowed and sealed.] [6]

A. S. Sprowls, a witness called by the commonwealth being on the stand, the commonwealth submitted evidence in support of the following offer :

[Now, Mr. Sprowls, I want to inquire of you as to a statement made to you by the witness Ralston.

Offer asked for.

We propose to show by the witness on the stand that in the evening of Friday, May 26, after the court was closed, after supper time, that the witness Ralston came to him and stated to him a conversation that he had overheard between the juror by the name of Watson and one of the defendants, Major Kay, as having occurred that evening at the Auld House. This for the purpose of showing that the witness stated the same facts stated upon the stand here as to that conversation at a time immediately following the conversation, and at a time when no question of litigation or dispute had arisen, in rebuttal of the denial of the defendant of the statement made by the witness on the stand.

Objected to as incompetent and irrelevant. Second, because there is nothing in this case, or any offer made, to bring the testimony in the offer within the rule that has been laid down by the Supreme Court with respect to corroborating a witness who has been attacked by showing that what he testifies to at present relating to an event in the past was narrated in substantially the same way by him immediately after the transaction.

The court: We think it is competent to show the witness told the same story soon after. Objection overruled, offer admitted for the same reason as in the ruling previous to this. And on request of defendants, exception allowed and sealed.] [7]

The Court charged the jury in part as follows :

[Gentlemen of the jury : At the May sessions of 1899, of this court, one Samuel Hazlett was tried on an indictment charging him with embezzlement as a banker. The prosecutor in that indictment named was one of his depositors. At the date of that trial there were many prosecutions and indictments pending against the same defendant for the same offense, based on informations made by those having deposited money in his bank. The trial at said term lasted for about ten days, when a verdict was returned by the jury, a part of which finding, relating to a portion of the costs, I have no hesitancy in saying, then shocked the judicial mind.] [9]

Verdict of guilty and sentence thereon. Defendants appealed.

*Errors assigned* among others were (6, 7) to rulings on evidence, reciting same.    (9) To a portion of the judge's charge reciting same.

*Jno. C. Bane* and *D. F. Patterson,* for appellants.—The sixth and seventh assignments of error bring up a question that is, at least, interesting, and we think very important; and that is to what extent the sworn statement of a witness at a trial may be corroborated by proof of his own unsworn similar statement of the same transaction prior to the trial, or prior to litigation respecting the matter about which he testified.    The question, in one of the several forms in which it may arise in general practice, was considered by this court in the case of Quigley v. Swank, 11 Pa. Superior Ct. 602, where it was ruled that such method of corroboration is never admissible in chief. All of the leading decisions of our Supreme Court upon the subject are cited in the opinion.

In Clever v. Hilberry, 116 Pa. 431, such evidence was held to be inadmissible, because it tended to support rather than to rebut the allegation of recent fabrication.

In Zell v. Com., 94 Pa. 258, and Hester v. Com., 85 Pa. 139, such testimony was allowed when introduced for the sole purpose of meeting the charge of recent fabrication.

In Craig v. Craig, 5 R. 91, the court says : But statements by a witness at another time, though admissible to contradict him, are not equally so to confirm him.    They are certainly not receivable before his credibility has been assailed; but it is a vexed question whether they may not be used to rebut evidence of self-contradiction by showing him to have been sometimes consistent.    The affirmative is supported by a number of respectable authorities, the principal ones of which are Lutterel v. Reynell, 1 Mod. 282, Friend's Case, 4 State Tr. 613, Wright v. Deklyne, Peters's C. C. Rep. 203, and Gilb. Ev. 135 ; opposed to which stands the doubt of Mr. Justice BULLER, in his law of Nisi Prius, 295, as well as the opinion of Lord REDESDALE, together with his assertion of a decision to the same effect by Chief Justice EYRE, as stated in a note to 1 Starkie's Evid. 187.    Mr. Phillips speaks doubtingly (vol. 1, p. 230) but inclines to the affirmative, and Mr. Roscoe (p. 96) seems to incline the other way.    Mr. Starkie positively asserts the negative as the general rule, yet admits that

such confirmatory evidence may possibly be made competent by circumstances. See also Henderson v. Jones, 10 S. & R. 322.

Appellants' counsel claim with confidence that the rule permitting the testimony of a witness at the trial of a case to be corroborated by proof of his own unsworn prior statements of like character, relating to the same transactions about which he gave testimony, is limited within reasonably well-defined boundaries, and that the testimony of Mr. Sprowls included in the seventh assignment of error is unmistakably outside of the limits of the rule. Not one of the grounds upon which any recognized authority approves of such method of corroboration is to be found in this case, unless the rule is carried to an extreme heretofore unknown, to wit: that every contradicted witness may be corroborated by proof of his own prior consistent statements, and such ruling would mean a total abandonment of all restrictions upon the rule, which have heretofore been so carefully preserved.

*W. S. Parker*, with him *Alex. M. Templeton*, district attorney, for appellee.—The sixth and seventh assignments of error relate to the admission of testimony of witnesses called in rebuttal for the purpose of corroborating the witness Ralston.

The contention of the commonwealth was, and is, that the appellants and their witness Watson admitted everything which they felt they dared not deny or which they believed would do them no harm, and positively denied those matters and things testified to by Ralston upon which no innocent construction could be placed or which were so repulsive as to disgust all decent persons and arouse a feeling of indignation against any one who would so characterize a respectable citizen.

The rebuttal, to the admission of which error was assigned, was not introduced for substantive testimony, and was not a part of the commonwealth's case in chief, but was solely for the purpose of meeting the attacks upon the testimony of the witness Ralston. The appellants complain that this distinction was not brought out in the charge of the court and the jury instructed thereon, but forget, apparently, the fact that at the time this testimony was being put in, when the fresh and lasting impression would be made upon the minds of the jury which

would be more effective than anything that might be said later, the court, in the hearing of the jury, repeatedly ruled that this was not substantive testimony but was only admitted as tending to meet the attacks made upon the testimony of the witness Ralston, by showing that he had given the same version as given on the stand of the conversations overheard very shortly after hearing them.

The exclusion of this testimony would clearly have been a wrong to the commonwealth. Appellants argue, reasonably, that " outside of the testimony produced by the appellants there was nothing but the testimony of Ralston to support the case of the commonwealth. His testimony alone gave a criminal coloring to what the appellants admit they did and said." Was not the commonwealth entitled to support this witness's recollection, when contradicted by the recollection of defendants and Watson, with the fact that this same " criminal coloring " was given to the conversation at a time before the verdict of the jury, in which Watson joined, had suggested to the mind of Ralston or any one else a criminal coloring in the association and conversation of the juror with defendants?

The commonwealth does not claim that the learned trial judge reviewed all the testimony or that he particularly referred to everything which was important in the case. Indeed the law does not require that of him and if the appellants feel that any part of their testimony was passed over too lightly they have but themselves to blame that the error—if error there were—was not corrected before the case was given to the jury.

OPINION BY RICE, P. J., July 26, 1900:

1. The defendants moved to quash the second count of the indictment because it was not in conformity with any provision of any statute relating to conspiracy. They did not contend in the court below, nor in the argument presented by their counsel in this court, that it did not charge an indictable offense. It is clear that whilst the count did not charge a statutory offense, yet, but for the words " contrary to the form of the act of the general assembly in such case made and provided," it was a well drawn count for a common-law offense. However it may have been at one time, it is now well settled, that these words shall be rejected as surplusage where the offense is pro-

hibited by the common law only: Respublica v. Newell, 3 Y. 407, 414; Pennsylvania v. Bell, Add. 155, 171; Sampson v. Com., 5 W. & S. 385; Com. v. Beamish, 81 Pa. 389; 1 Arch. Cr. Pr. & Pl. * 93; 1 Wh. Cr. L. (7th ed.), sec. 413; 1 Bouv. L. Dict. (Rawle) 1086. Being mere surplusage, the fault in the indictment, if any, was purely formal, and the court had as clear authority, under section 11 of the criminal procedure act, to strike out the useless words, as it would have had to instruct the jury to disregard them.

2. In the construction of the statute 33 Edward I. it was held that cause of challenges, on the part of the prosecution, need not be shown, until the whole of the panel was gone through, and it should appear that a full jury could not be had without the persons so challenged: Roberts's Digest, 339. This right exists at the present time, and in misdemeanors as well as in felonies: Haines v. Com., 100 Pa. 317; Smith v. Com., 100 Pa. 324; Com. v. O'Brien, 140 Pa. 555; Com. v. Carling, 1 C. C. 413; Com. v. Marrow, 3 Br. 402; Com. v. Keenan, 10 Phila. 194. It is always to be exercised under the supervision of the court, Haines v. Commonwealth, supra, but may not be wholly denied, Com. v. Llewellyn, ante p. 214. . . . It will be observed that it is not merely the right to "stand aside" a juror as his name is drawn from the box and called, but the right to reserve the acceptance or the challenge (either peremptory or for cause) of the juror until the whole panel is gone through. The right exists independently of the mode in which jurors in the particular kind of a case to be tried are impaneled, and the mode need not necessarily be changed in order that the right may be exercised. Where (as is the practice in cases in which the parties challenge alternately and each has but four peremptory challenges), the jurors are called into the box before challenging begins, the right of the commonwealth as above stated necessarily includes the right to "stand aside" one or more of the jurors thus called and so on, as others are called to take their places, until the panel is exhausted. The objections, whether well founded or not, to the practice of standing aside jurors are of no greater force where the right is exercised after the box is filled and before the defendant is called upon to challenge than where it is exercised the instant the name of the juror is called. But it is urged that it was unlaw-

ful to call twenty jurors in the first instance.    True, it was decided in Com. v. Spink, 137 Pa. 255, that the 140th section of the Act of April 14, 1834, P. L. 333, as amended by the Act of June 23, 1885, P. L. 138, does not apply to criminal cases; therefore, neither the commonwealth nor the defendant has a right to demand that the jury be called in the manner there prescribed.    But does it follow that it is reversible error to adopt that mode?    Clearly not, if neither party objects: Act of March 31, 1860, P. L. 427, sec. 53.    And, as long as it remains the law that the commonwealth may stand aside jurors until the whole panel is gone through, it is impossible to see what meritorious objection a defendant can urge against the method pursued in this case.    It is distinct advantage to the defendant to know beforehand the jurors who will take the places of those challenged, and especially is this true where four challenges have been made by the commonwealth and he is about to make his last challenge.    But whether a positive advantage or not, it is a mode which does not impair his right of challenge or enlarge in the slightest degree the power of the commonwealth to exclude jurors from the jury box by challenging or standing aside.    Nor does it conflict with the provisions of any statute.    We conclude, that, whilst the mode pursued by the court below in impaneling the jury was not obligatory, it was not unlawful or prejudicial to any right of the accused. The second and third assignments are therefore overruled.

3. In view of the testimony given by the juror Watson in his examination in chief, and especially that part of it in which he declared, that he had not been corrupted or influenced by what the defendants had said to him or in his presence, we cannot say that the question put to him on cross-examination (fourth assignment) was so grossly improper as the counsel for the defendants claim it was.    It was well calculated to test the genuineness of his assertions as to his unbiased mental condition and was not intended, so far as we can see, to embarrass, humiliate or degrade him.    The method and extent of cross-examination, especially where the object is to test the accuracy and credibility of the witness, must be left largely to the discretion of the trial judge, and unless that discretion is plainly abused to the injury of the party complaining the appellate court will not reverse.    The appellant must not only

establish the existence of an error in the proceedings below, but that the error has tended to his injury. It is not sufficient to show that an improper question, either in form or substance, has been put to a witness. It must appear that an answer was received which tended to injure the case of the appellant. This has been so frequently decided, in almost the exact terms in which we have stated the rule, as to render further discussion of this assignment unnecessary. We do not say that the question was improper, and, even if it was, the answer could not possibly have injured the defendants.

4. The reasons given by the learned trial judge for overruling the objection to the question recited in the fifth assignment of error sufficiently vindicate the ruling. It is unnecessary for us to add anything. The same is true of the eighth assignment. These assignments are not sustained.

5. J. M. Ralston, a witness called by the commonwealth in the presentation of its case in chief, testified that during the trial of the Hazlett case he had seen Major Kay, one of the defendants in the present case, and Frank Watson, a juror in the Hazlett case, in apparently earnest conversation, and that later a conversation took place between Kay and Watson in his presence which he detailed. In rebuttal the commonwealth called Chester Brownlee, who, notwithstanding the defendant's objection, was permitted to testify, that, immediately after this alleged conversation, Ralston came to him and said, substantially, that it looked to him, Ralston, as if Kay was trying to influence the juror, and that he intended to tell Mr. Sprowls, one of the counsel, of it. The admission of this testimony is the subject of the sixth assignment of error.

The witness Ralston had also testified for the commonwealth in chief to certain occurrences and conversations he had overheard in which the defendants were concerned, and the latter, whilst admitting some of them, had given testimony putting a somewhat different coloring upon what was said and done and tending in some degree to contradict Ralston's version of them. In rebuttal Mr. Sprowls was permitted to testify, that, on the following day, the witness, Ralston, narrated to him the facts to which he had testified in chief. Ralston's version, as testified to by Mr. Sprowls, was essentially the same as that which he gave as a witness. The admission of this testimony of Mr.

Sprowls is the subject of the seventh assignment of error. These two assignments may be considered together.

The subject of the admissibility in evidence of the previous statements of a witness consonant with his testimony is not free from difficulty; that is to say, it is not easy to harmonize all the decisions and to deduce therefrom a single general rule governing every case. Such evidence cannot, as a general rule, be given in chief: Quigley v. Swank, 11 Pa. Superior Ct. 602, and cases there cited. Under what circumstances it may be given in rebuttal is the question upon which counsel disagree. In Henderson v. Jones, 10 S. & R. 322, the broad doctrine was asserted, that where the evidence is offered in rebuttal as confirmatory of what a witness has sworn, either where his credit is impeached by attacking his character, or by proof of inconsistent declarations made by him, or where his evidence is impugned by contradictory proof, it is admissible. "The last," said Justice DUNCAN, "I consider as one of the strongest reasons for admitting it." But in Craig v. Craig, 5 R. 91, Chief Justice GIBSON declared, that, though usually called confirmatory, these consistent statements are universally agreed not to be admissible in chief but only to rebut other contradictory statements of the witness, and not even then under all circumstances. He concluded his discussion of the question from the standpoint of principle as well as authority by adopting the rule of Mr. Starkie with its exception (1 Starkie's Ev. 187), "that consonant declarations may be given in contradiction of evidence tending to show that the testimony at the bar is a fabrication of a recent date; and to show that the same statement was made before its ultimate effect on the question trying could have been foreseen." It is a significant fact that he made no allusion to the case of Henderson v. Jones; and it is plain to be seen, that the broad doctrine, there asserted, that evidence of consonant statements is admissible whenever the testimony of the witness has been contradicted, cannot be reconciled with the rule laid down in Craig v. Craig. Nor has it been re-established by subsequent decisions, as a careful examination of the cases will show. In Good v. Good, 7 W. 195, it was declared to be the better opinion that such evidence is "not admissible generally, merely because the credit of the witness is impeached, by showing his general character for

truth to be bad, or that he has given a different account of the matter at another time," but that special circumstances may make it admissible. The special circumstance that made the evidence admissible in that case was that evidence tending to show that the witness had an interested motive had been admitted for the avowed purpose of discrediting her. To rebut any inference that she was influenced by that motive it was held competent to show that she had given the same account of the matter two years before she had any relation to the party or the cause that could have influenced her. This was fairly within the principal of Craig v. Craig. See also 1 Gr. on Ev. (15th ed.) 469. In McKee v. Jones, 6 Pa. 425, evidence had been given of contradictory statements made by the witness without first interrogating him concerning them. It was held competent in rebuttal to show that prior in point of time to either of the inconsistent declarations the witness had given the same account of the matter that he gave in court. In Bricker v. Lightner, 40 Pa. 199, the testimony of the witness had been assailed upon the ground of her mental incompetency, therefore it was held that evidence of her prior statements consistent with her testimony was admissible to help the jury to a right estimate of her intellectual faculties. " To reword a narrative without substantial variation is indicative of memory, the most valuable of all the powers of the mind." In Zell v. Commonwealth, 94 Pa. 258, the evidence was admitted for the sole purpose of showing that her testimony was not a fabrication of recent date, but in that case the opposite party had attacked her character for truth and had given evidence of her conduct and declarations inconsistent with her testimony. In Hester v. Commonwealth, 85 Pa. 139, which comes as near as any of the reported cases to sustaining the ruling of the court below, the confirmatory evidence was admitted without objection. Afterwards the defendant attempted to impeach the testimony of the witness by evidence that the conversation narrated by him could not have been heard. The refusal of the defendant's motion to strike out the testimony of the witness was held not to be error. The effect of the evidence introduced by the defendant, if believed, would have been to show that the testimony must have been a pure fabrication. Moreover, the witness was an officer in the jail where

the alleged declarations of the accused were made. It was his duty to communicate them to the district attorney or at least to some one in authority. His mere omission to do so would have discredited him when he went on the witness stand eight years afterwards to testify to them. Under the special circumstances of that case it was a material fact that the witness had declared his knowledge to the district attorney before the defendant's discharge on the first indictment. It is true Justice WOODWARD cited Henderson v. Jones with approval, but only for the point actually raised and necessarily decided in that case, namely, that where a witness is contradicted and evidence is also given to impeach his character this kind of evidence is admissible. We do not think the case of Hester v. Commonwealth can be regarded as establishing a general rule that it is admissible whenever a witness has been contradicted. We are confirmed in this conclusion by later decisions of the Supreme Court in which the present chief justice has pointed out the very narrow and exceptional circumstances in which this kind of testimony is admitted. We refer to Clever v. Hilberry, 116 Pa. 431; Crooks v. Bunn, 136 Pa. 368; Thomas v. Miller, 165 Pa. 216. It was not alleged that the witness Ralston had made inconsistent or contradictory statements, no attempt was made to impeach his general character for truth, and no evidence, direct or circumstantial, was given tending to show that his statements were fabrications of recent date, or that his testimony was influenced by a corrupt motive, or that, by reason of his relation to any of the parties or the cause, which relation did not exist when his prior statements were made, he was unconsciously influenced. In short, none of the exceptional circumstances referred to in the foregoing cases was shown. There was, it is true, a conflict of testimony; that is to say, the witness Ralston's version of the transaction did not agree in all particular with the version given by the defendants and the witnesses called by them. But we feel constrained by the great weight of authority to hold that a mere conflict of testimony of that nature is not, alone, a sufficient reason for the admission of the witness's prior unsworn statements. This view is sustained by the text-books I have had an opportunity to consult: 1 Gr. on Ev. (15th ed.) 469; 1 Whart. on Ev. 570; 2 Taylor on Ev. (Bl. ed.) sec. 1476; 3 Jones on Ev. 872,

873. Even if there were doubt of the correctness of this conclusion as applied to the testimony of Mr. Sprowls we think there can be no doubt of the incompetency of the testimony of Chester Brownlee. To admit evidence that the witness expressed a belief that the accused had attempted to influence the juror, without stating the grounds of his belief, as confirmatory of his testimony as to the conversation between the accused and the juror is going farther than is warranted by sound principle or by any Pennsylvania decision that has come to our notice.

6. In saying to the jury that the verdict of the jury in the case in which the alleged embracery was practiced was " a shock to the judicial mind " we think the learned trial judge committed error. This significant and emphatic utterance followed by a narration of the proceedings leading up to the indictment,— the allegations of the district attorney upon the hearing of the motion for reduction of bail, the action and remarks of the court thereon—had a natural tendency to fix in the minds of the jurors the impression that the verdict was grossly wrong. With this impression implanted in their minds at the outset of their consideration of the evidence they would readily credit the commonwealth's allegation that one or more of the jurors had been corruptly approached. It was an impression which the defendants could not remove or even combat by evidence. There was no mode by which the jury could determine from the evidence before them whether or not that verdict was warranted by the evidence. They would naturally take the statement of the learned judge as verity, and consider the evidence in the light of the significant and damaging fact imported into the case by his remark. Considerable latitude is allowed to trial judges in this commonwealth in commenting, and even expressing an opinion, upon the evidence in the case. But it would be entirely subversive of trial by jury if it were held allowable, or even harmless error, for the court to introduce into the trial of a criminal case so important a fact as this—a fact which would not have been permissible for the commonwealth to prove or the defendants to disprove. It was proper enough for the jury to be informed that this was not a private prosecution, but, no matter how just the indignation of the court at the former verdict, it was error, and manifestly prejudicial to

the rights of the accused, to inform the jury that this pros-
ecution for embracery and conspiracy to obstruct the admini-
stration of public justice grew out of the trial of another case,
the verdict in which was so grossly unwarranted as to be a
shock to the mind of the learned and impartial judge presiding
at that trial.

7. Excepting as above stated, we find no error in the charge
which would justify a reversal. There were two or three in-
accuracies in reciting the evidence but they were such mere
"slips" as under numerous decisions ought to have been called
to the attention of the judge before the jury retired: Yerkes
v. Wilson, 81* Pa. 9; Knapp v. Griffin, 140 Pa. 604; Krepps
v. Carlisle, 157 Pa. 358; Commonwealth v. Preston, 188 Pa.
429; Mann v. Cowan, 8 Pa. Superior Ct. 30. There is no gen-
eral unbending rule which requires counsel to interrupt the
court to correct every misstatement of law or fact which they
may conceive is being made, and such duty will not be imposed
in the case of a manifestly one-sided charge, nor, ordinarily, in
the case of the misstatement of pivotal facts, nor when it is
not reasonably certain that a correction of the mistake would
undo the injury; but there are cases, like the case at bar, when
it may fairly be said to be the duty of counsel to call the at-
tention of the court, at the conclusion of its charge, to an evi-
dent mistake in a statement of fact, if such misstatement is to
be relied on as error: Taylor v. Burrell, 7 Pa. Superior Ct.
461.

8. The complaint that the charge was one-sided is not sus-
tained. The court gave a general review of the evidence on
the one side and the other which fairly and adequately pre-
sented the respective contentions of the parties with enough
reference to the items of evidence to assist the jury in recall-
ing it a substantial whole, and to appreciate its bearing. More
was not required, especially as all of the points submitted by
the defendants were affirmed: Commonwealth v. Kaiser, 184
Pa. 493; Walton v. Caldwell, 5 Pa. Superior Ct. 143. That a
judge does not make all the remarks of which the nature of
the case may admit is not invariably ground for reversal. If
such were the rule, few judgments would be affirmed, for there
are few cases in which something in addition, that might have
been appropriately said, could not be suggested. We do not

think this charge comes within the principles of the cases cited by the defendant's counsel in support of these assignments.

9. The special complaint that the learned judge unduly magnified the offense without any caution to the jury to distinguish between the enormity of the offense and the guilt of the accused is not sustained. This portion of the charge not only was correct in point of law, but was appropriate and timely. The gravity of the crime charged in the indictment could hardly be overstated; it certainly was not in the present case, whether it be looked at abstractly or in the light of the evidence. But for the errors complained of in the sixth, seventh and ninth assignments, we would have no hesitation in affirming the judgment.

The judgment is reversed, and a venire facias de novo awarded.